CHARLES W. BUCHHOLZ, Appellant, v. THE NEW YORK, LAKE ERIE AND WESTERN RAILROAD COMPANY, Respondent.

1. OBSTRUCTION OF HIGHWAY — PUBLIC NUISANCE — PRIVATE ACTION. An individual who has suffered special injury from the public nuisance created by the unlawful obstruction of a highway by an individual or corporation, may maintain a private action against the author of the injury for damages, and in a proper case may invoke the jurisdiction of equity to restrain its continuance.

2. OBSTRUCTION OF HIGHWAY — PRIVATE ACTION — SPECIAL DAMAGE. A case for equitable interposition and for the recovery of damages at the suit of an individual arises when an unlawful change in and obstruction of a highway by an individual or corporation diverts travel from the abutting premises of a hotel-keeper and seriously interrupts his business.

3. HIGHWAYS — CHANGE OF LINE — RAILROADS — ACT OF 1850. The provision of the General Railroad Act of 1850 (Chap. 140, § 24), empowering a railroad company to change the line of a highway "where an embankment or cutting shall make a change in the line of such highway desirable, with a view to a more easy ascent or descent," has no application to the case of the discontinuance of a highway at a grade crossing, the removal of the grade crossing, and the change of the line of travel by a new way to a bridge crossing, when no embankment or cutting existed at the grade crossing.

4. HIGHWAYS — OBSTRUCTION AND CHANGE OF LINE — RAILROADS — REMOVAL OF CROSSING — ACT OF 1850 — INJURY TO PROPERTY OWNERS. The power conferred upon a railroad company by the General Railroad Act of 1850 (Chap. 140, §§ 24, 28) to cross highways and, in so doing, to carry them under or over the track, coupled with the duty of restoration so as not unnecessarily to impair their usefulness, does not authorize a railroad company, of its own motion and without the sanction of the court or the public authorities, to obstruct and practically discontinue a highway, remove a grade crossing and change the line of travel by substituting another way to a bridge crossing at another point, to the injury of property owners.

5. UNLAWFUL DISCONTINUANCE OF HIGHWAY — RATIFICATION BY PUBLIC AUTHORITIES — PAST DAMAGES OF ABUTTING OWNER. If, during the pendency of an action by an abutting property owner, to enjoin the unlawful obstruction and discontinuance of a highway at a grade crossing and the diversion of its line into a private way by a railroad company and for damages, the public authorities approve such discontinuance and accept a dedication of the new way, their action cannot relate back to the time when the unlawful acts were done so as to cut off the right of the plaintiff to damages for the intervening period; but, if the claim for an

injunction is thereby defeated, the court should retain the suit for the purpose of awarding such damages.

*People ex rel. Green* v. *D. & C. R. R. Co.* (58 N. Y. 152), distinguished. *Buchholz* v. *N. Y., L. E. & W. R. R. Co.* (66 Hun, 377), reversed.

(Argued February 19, 1896; decided March 3, 1896.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made December 12, 1892, which affirmed a judgment in favor of defendant dismissing the complaint upon the merits entered upon a decision of the court on trial at Special Term.

This action was brought to procure an injunction requiring defendant to restore a grade crossing and to recover damages alleged to have been sustained by the taking up of the same.

The facts, so far as material, are stated in the opinion.

*John W. Lyon* for appellant. The plaintiff, even as abutting owner, had rights of access to and benefits derived from the travel and use of the street in front of his property, and of which he could not be divested without compensation for the damages sustained. (*Reining* v. *N. Y., L. E. & W. R. R. Co.*, 128 N. Y. 157; *Abendroth* v. *M. R. Co.*, 122 N. Y. 1; *Pond* v. *M. E. R. Co.*, 112 N. Y. 188; *Green* v. *N. Y. C. R. R. Co.*, 12 Abb. [N. C.] 124; *Crooke* v. *Anderson*, 23 Hun, 266; *Story* v. *N. Y. E. R. R. Co.*, 90 N. Y. 122; *Van Brunt* v. *Ahearn*, 13 Hun, 388.) This action was brought for damages because of the loss sustained by the plaintiff from a depreciation of his business as a hotel-keeper caused by the diversion of the public from passing his premises. That the plaintiff is entitled to any damages sustained by reason of the loss of such patronage is well settled. (*Callanan* v. *Gilman*, 107 N. Y. 360; *Flynn* v. *Taylor*, 127 N. Y. 596; *Hood* v. *Smith*, 5 Wkly. Dig. 117.) This action is distinguishable from that class of actions pertaining to the grading of the streets by railroads. (*Reining* v. *N. Y., L. & W. R. R. Co.*, 128 N. Y. 157.) The alteration as made would have been illegal,

81

even had it been done by the village authorities. (*Cohen* v. *Mayor, etc.*, 113 N. Y. 532.)

*Lewis E. Carr* for respondent. The defendant might change the location of the street if necessary to secure a safe restoration of the way after the building of its railroad. (Laws of 1850, chap. 140, §§ 24, 27; 2 R. S. [8th ed.] 1749, 1751; *People ex rel.* v. *D. & C. R. R. Co.*, 58 N. Y. 152; *People* v. *N. Y. C. & H. R. R. R. Co.*, 74 N. Y. 302; *Conklin* v. *N. Y., O. & W. R. Co.*, 102 N. Y. 107; *Uline* v. *N. Y. C. & H. R. R. R. Co.*, 101 N. Y. 98; *Rauenstein* v. *N. Y., L. & W. R. R. Co.*, 136 N. Y. 528.) No property right of the appellant was affected by the change, and so there was and is no right to an injunction or damages. (*Story* v. *N. Y. E. R. R. Co.*, 90 N. Y. 122; *Crim* v. *Starkweather*, 136 N. Y. 635; *Coster* v. *Mayor, etc.*, 43 N. Y. 399; *People* v. *Kerr*, 27 N. Y. 188, 192; *Fearing* v. *Irwin*, 55 N. Y. 486, 490; *Smith* v. *City of Boston*, 7 Cush. 254; *Hier* v. *N. Y., W. S. & B. R. Co.*, 40 Hun, 310.) There was sufficient assent from the municipality, if such assent was needful for the protection of the defendant. (*Buswell* v. *Links*, 8 Daly, 518; *Kilbourne* v. *Bd. Supervisors Sullivan Co.*, 62 Hun, 210, 219; 137 N. Y. 170, 178; Laws of 1873, chap. 370; *People ex rel.* v. *Jones*, 63 N. Y. 306.)

ANDREWS, Ch. J. Main street, in the village of Port Jervis, as it existed prior to March, 1890, ran in a northerly and southerly direction, passing the plaintiff's premises, upon which for many years had been erected a hotel and barns, used by him for hotel purposes. The plaintiff's lot adjoined lands of the defendant on the north, and, up to the date mentioned, the tracks of the defendant crossed Main street at grade on its own premises, fifty feet or more north of the north line of the plaintiff's lot. In March, 1890, the defendant constructed a bridge over its tracks, one hundred feet east of the grade crossing, and connected it with Main street, north of the plaintiff's lot, and an approach thereto on the south from Main street, one hundred feet or more south of

the plaintiff's premises, and at the same time took up the planking at the grade crossing and built a fence across Main street north of plaintiff's lot, where the bridge connected with the street. By these acts of defendant the travel on Main street in front of plaintiff's premises was diverted to the new way across the bridge. It left the plaintiff's hotel and premises on a spur of Main street, closed at the north, or on what was, after the change, practically a lane starting from the point one hundred feet south where the new way diverged from Main street. It was found that the plaintiff, by reason of the interference with Main street, sustained special damage, and the facts proved in connection with the use to which the plaintiff's premises were devoted amply justify the finding. But the trial court refused relief on the ground that under the circumstances the plaintiff had suffered no injury to his property for which he was entitled either to damages or an injunction.

There can be no doubt of the general proposition that an unlawful obstruction of a public highway, by an individual or corporation, constitutes a public nuisance, and subjects the party who created or maintains it to an indictment, and to a proceeding for its abatement in behalf of the public. But the public remedy is not, in all cases, exclusive. An individual who has suffered special injury from the nuisance, not common to the whole public, may maintain a private action against the author of the injury for damages, and in a proper case may invoke the jurisdiction in equity to restrain its continuance. The equitable jurisdiction attaches when the legal remedy is inadequate, either because the damages are such that they cannot be measured by a money standard, with any certainty, or where they are continuous, and multiplicity of suits would be likely to result if the remedy was confined to proceedings at law.

The injury suffered by the plaintiff in this case from the change in, and obstruction of, the street, whereby travel was diverted from his premises, and his business as a hotel-keeper seriously interrupted, made a case for equitable interposition, and for the recovery of damages, within the cases in this

state, assuming that the defendant's acts were unlawful. (*Adams* v. *Popham*, 76 N. Y. 410 ; *Cullanan* v. *Gilman*, 107 id. 360 ; *Flynn* v. *Taylor*, 127 id. 596 ; see, also, Sto. Eq. § 926 *et seq.*) It is contended in behalf of the defendant that, under the provisions of the General Railroad Act of 1850, it was authorized to make the change in Main street, for the purpose of obviating a grade crossing. By section 28, sub. 5 of the act, a railroad is authorized to construct its road "across, along or upon" any street or highway which the route of its road shall intersect, coupled with the obligation to restore the street or highway thus intersected to "its former state, or to such state as not unnecessarily to have impaired its usefulness." By section 24, it is provided that, at a crossing, the highway "may be carried under or over the track, as may be found most expedient," and, by the same section, power is given to a railroad company to change the line of a highway, "where an embankment or cutting shall make a change in the line of such highway * * * desirable, with a view to a more easy ascent or descent," and it authorizes additional lands to be taken by the company for the construction of such new line. The provision last cited is the only one in the act which in terms authorizes a railroad company to change the line of a highway, and, without considering whether the authority conferred by this provision may be exercised independently of the action of the local authorities having the charge of highways, it is sufficient to say that the provision has no application in this case. The change in Main street was not and could not have been made under the authority of this provision, since no embankment or cutting existed at the grade crossing. The defendant must, therefore, rest for its justification, under the act of 1850, upon the power given by the 28th section to cross highways, coupled with the duty of restoration, and that given by the 24th section to carry a highway under or over the track of its road. We are of opinion that neither of these sections conferred on the defendant power to change the line of Main street as it existed prior to March, 1890. The bridge and the new line were con-

structed wholly on the lands of defendant, and this, so far as we can perceive, was a perfectly lawful act. It was a private way, and, if Main street had been left open and unobstructed, the plaintiff would have no legal cause of complaint, although the new way might divert travel from his premises.

But the company having practically closed Main street north of the plaintiff's lot, the question of its power so to do necessarily arises. It is plain that the power conferred on the defendant to cross highways, and in so doing to carry them above or below grade, coupled with the duty of restoration so as not unnecessarily to impair their usefulness, confers some discretion. It has accordingly been held that a railroad company, under this power, may determine whether a crossing shall be made by carrying the highway above or below its tracks, and its discretion fairly exercised, although it interferes with the convenience of an abutting property owner or diminishes the value of his property, is *damnum absque injuria*. (*Conklin* v. *New York, Ontario & W. R. Co.*, 102 N. Y. 107; see, also, *People* v. *N. Y. C. & H. R. R. R. Co.*, 74 id. 302.) These were cases where the acts of the railroad were expressly authorized and done within the limits of the highway, and where there was no attempt to change its original location. No case which we have found in this state goes beyond these cases in defining what may be done by a railroad company in the exercise of the power to cross highways. If a company can change the route of a highway in exercising this power, it must be for the reason that the right to do so is an incident to the power to cross highways and of the obligation of restoration, in cases where such a change would be reasonable and beneficial to the public. But this claim is met at the threshold by the settled principle that an interference with a highway by private persons or corporations unless sanctioned by express statutory authority or by authority implied from powers affirmatively given is unlawful, and statutes "authorizing obstructions upon highways which would otherwise be nuisances are strictly construed and must be closely pursued." (2 Dil. Mun. Corp. § 657 and cases cited.) Public rights are not easily

lost, and an interference with a highway by a private person or by a corporation ought not to be sanctioned by a construction of a statute which neither in terms nor by necessary implication authorizes it. In the case of *The Warren R. R. Co.* v. *The State* (29 N. J. L. 353) a railroad company was authorized by its charter to alter and grade the public roads it should cross so that travel should not be impeded. The company built an embankment at a certain point so as to make the highway impassable. As a substitute for the road so obstructed the company, for a short distance, provided another, avoiding the old route and embankment. It was held that the company thereby subjected itself to indictment. The chief justice said : " It is claimed that the words *alter and grade* are of sufficiently large import to include changing the route of the road. No such construction can be given to the words by unnecessary implication. Public highways ought not to be destroyed even in part under pretense of legislative authority unless it be conferred either in express terms or by necessary implication. If the words are ambiguous, the construction ought to be in favor of the common right of highway, not against it." In *Hughes* v. *The Providence & Worcester R. R. Co.* (2 R. I. 493) the charter of a railroad company prescribed that if in its course it should pass any highway, it should be so constructed as not to impede or obstruct its safe and convenient use, and gave the company the right to raise and lower the highway so that the railroad might pass under, over or across the same. It was held that under this authority the company was not justified in widening the highway or diverting its course, or supplying its place by a new way, even if the public convenience was promoted by the change. The court in that case sustained an action by a private owner for damages for the obstruction of the original highway. We think these cases proceed on a sound principle. In our opinion the act of the defendant in obstructing Main street above the plaintiff's premises is not justified by the act of 1850, and that it cannot shelter itself from liability to the plaintiff under the plea of the public interest. The case of

*The People ex rel. Green* v. *Dutchess & Columbia R. R. Co.*
(58 N. Y. 152) is cited by the defendant's counsel as an
authority for the proposition that a railroad company in dis-
charging its duty to restore a highway crossed by it, to "its
former state or to such state as not unnecessarily to have
impaired its usefulness," may change the line of the highway,
if that is a reasonable method of restoration. We think the
case does not sustain this contention. Power is given by the
highway acts to highway commissioners under certain regula-
tions to alter or discontinue highways. The railroad com-
pany in that case had located its road within and along a high-
way, rendering travel therein dangerous. The proceeding
was by commissioners of highways to compel the company to
make the highway safe and the court sustained a mandamus
requiring the company to change the highway for a short dis-
tance to the side of its road, so as to render the highway safe
for travel. What the court may compel a railroad company
to do is one thing, but it is quite a different thing to say that
a company, without the sanction of the court or the public
authorities, may of its own motion discontinue a highway and
substitute another way in its place to the injury of property
owners.

Among the findings of the court in this case is one to the
effect that the trustees of the village, who by the charter are
invested with the power of commissioners of highways in
towns, assented to the change made by the defendant and
accepted the dedication of the new street and bridge, and dis-
continued the part of Main street north of the plaintiff's lot
to the north end of the bridge. This finding is not supported
by the evidence. The defendant proved on the trial that the
trustees of the village on the 7th day of December, 1891, three
days before the trial of the action, and nearly eighteen months
after its commencement, on application of the defendant,
passed a resolution accepting the new way and discontinuing
the part of Main street mentioned, " on condition that said
railroad company, within ten days from this date, file with the
clerk of said village an agreement to maintain said bridge and

approaches thereto." It does not appear that this condition has been performed. There is no claim that it was performed prior to the 10th day of December, 1891, the day on which the action was tried and decided. The defendant at that time stood as if no action had been taken by the village authorities. Even if the acceptance had been unconditional, and operated as a valid discontinuance of the part of Main street north of plaintiff's lot, so as to defeat the claim for an injunction, the court nevertheless should have retained the suit for the purpose of awarding any damages sustained by the plaintiff prior to the legalization by the trustees of the acts of the defendant. The order and approval could not take effect by relation to the time when the acts were done, so as to cut off the right of the plaintiff to damages for the intervening period.

We think the judgment should be reversed and a new trial ordered.

All concur.

Judgment reversed.