(31 Misc. Rep. 316.)

OLD FORGE CO. et al. v. WEBB et al.

(Supreme Court, Special Term, Onondaga County. April, 1900.)

1. NUISANCE—RAILROAD—STATE LAND—OCCUPATION — PRIVATE INJURY— EVIDENCE.

The wrongful construction of a railroad over lands belonging to the state does not become a private nuisance in respect to the owner of a line of steamers operating between the same points, because it diverts traffic from the steamboat line, and thus renders less valuable the use and enjoyment of a property that was established before the railroad was built.

2. SAME—OCCUPATION OF HIGHWAY.

The unlawful occupation of a public highway leading to a hotel and the wharf of a steamboat line, by a railroad company, from a point about six miles distant from the latter properties, so as to practically destroy said highway for its primary use, and to impair and prevent travel to the hotel and steamboat wharf, which had formerly been accustomed to come to them, does not constitute such a private injury to the owner of the hotel and steamboat line as will entitle him to maintain an action for the abatement of the nuisance.

Action by the Old Forge Company and others against W. S. Webb and others for the abatement of a nuisance. Demurrer to complaint sustained.

C. D. Adams, for plaintiffs.

C. C. Snyder and F. G. Fincke, for defendants.

ANDREWS, J. It appears from the complaint, and the papers therein referred to, that the Old Forge Company owns a large hotel at the foot of the Fulton chain of lakes, in Herkimer county. In the neighborhood of its hotel it has laid out its lands in building lots, many of which it still retains. These lots have become valuable. The hotel is about 2½ miles distant from Fulton Chain station, on the Mohawk & Malone Railroad. The two points are connected by a steam railroad, which the Fulton Chain Railroad Company has built. Running from the hotel, and through First, Second, Third, and to Eagle Bay, at the head of Fourth Lake, the Crosby Transportation Company maintains a line of steamers for the carriage of passengers and freight. Parallel with the line of lakes a public highway runs from the hotel to Eagle Bay. The latter point is on the line dividing Herkimer county from Hamilton county. To the east of Fourth Lake, and at a distance of some 10 or 12 miles, lies Racquette Lake, and still further to the east Blue Mountain and Long Lakes. All these lakes have become popular summer resorts, and one of the principal means of access to them is by Fulton Chain station and the Fulton Chain Railroad. Many stay at the hotel of the Old Forge Company. Others, using either the boats of the Crosby Transportation Company or the highway, pass on to one of the upper lakes of the Fulton chain, or to Racquette, Blue Mountain, or Long Lake. This travel is necessarily advantageous to the plaintiffs. On February 7, 1899, the defendants filed with the secretary of state articles of incorporation of a proposed street surface railroad, under the name of the Racquette Lake Railroad Company. The line on which it was to build is described as being "from the station of the Mohawk & Malone Railroad Company

known as Clearwater, * * * and running thence northerly and easterly to Racquette Lake," and it is to run "upon a highway leading from Clearwater, town of Webb, Herkimer county, to Racquette Lake." By turning to the map referred to in the complaint, it appears that Clearwater lies some seven miles north of Fulton Chain station. The projected railroad runs thence a little south of east, and strikes the highway between the hotel and Eagle Bay, about six miles from the former point. It then runs east along the highway to Eagle Bay, and thence northeasterly to Racquette Lake. The Racquette Lake Railroad Company later applied to the railroad commissioners of the state, and on April 11, 1899, that body made a certificate that section 59 of the railroad law had been complied with, and that public convenience and necessity required the construction of the road. It has since been completed, a heavy rail suitable for a steam railroad was adopted, and, in fact, steam is used as a motive power. On January 16, 1896, the defendant William Seward Webb conveyed to the state of New York a parcel of land lying north of Second, Third, and Fourth Lakes, reserving "the easement of a projected highway * * * from Racquette Lake to Clearwater." This parcel then became part of the Adirondack Park and Forest Preserve. The projected highway mentioned in the reservation, however, has never been laid out, and does not, in fact, exist. Between Eagle Bay and Racquette Lake all the land forms part of the Adirondack Park. A wagon road, in more or less bad condition, seems to connect these two points, but in regard to it the plaintiffs allege that they "have no knowledge or information sufficient to form a belief that any lawful highway was ever laid out according to law, and recorded as the law requires." The Racquette Lake Railroad, therefore, upon leaving Clearwater, runs for about four miles over the land of the Adirondack Park, and not upon any highway. It then passes along the highway to Eagle Bay, and thence again over the land of the park to Racquette Lake.

Because of these facts, it is said that the Racquette Lake Railroad Company has no legal existence; the secretary of state had no right to file its articles of incorporation; the railroad commissioners had no right to grant its certificate; its pretended existence is the result of a conspiracy on the part of the defendants to violate the state constitution and the fisheries, game, and forest laws; acting in the name of a pretended corporation, they are still individually liable; they have unlawfully occupied the Adirondack Park; their acts constitute a nuisance; they have, without authority, interfered with the public highway, which act also constitutes a nuisance; and, finally, although what they have done is a public nuisance, to be proceeded against primarily by the public, yet the plaintiffs may sue to abate it, if they have suffered peculiar injury distinct from that of the public at large.

It is well understood that a private individual may not maintain suit to abate a public nuisance unless he receives therefrom some separate and peculiar injury distinct from that he suffers as one of the public. Therefore, assuming all of the plaintiffs' claims; assuming that the Racquette Lake Railroad Company has no legal existence; that acts done in its name are in reality the acts of the defendants; that they are without right upon the property of the park, and

unlawfully upon the highway; that their presence in the one place or in the other constitutes a nuisance,—still the question remains, may the plaintiffs maintain this action?  If this question is answered in the negative, it makes it unnecessary to dispose of the other issues in the case.  And, in my opinion, it must be so answered.

First, as to the trespass upon the state lands, as distinct from the interference with the highway.  This trespass, in itself, in no way inflicts peculiar injury upon the plaintiffs.  As citizens of New York, they are interested in the preservation of the forests.  But it is an interest common to all the public.  Whether the defendants shall be allowed to disturb said property is a question for the state in its corporate capacity to decide.

The allegation as to damage is that by reason of the facts recited the established use and enjoyment of the plaintiffs' properties will be interfered with, and their salable values decreased.  This, I take it, means that a competing line of communication between the Mohawk & Malone Railroad and Eagle Bay will divert traffic, and so cause an injury, but this injury is not caused by the alleged nuisance.  In itself, this nuisance inflicts no private damage.  The damage comes, if at all, not because of the existence of any nuisance, but because of the construction of a rival line of traffic to Racquette Lake.  Precisely the same damage would result were the line built for the whole distance over private property.  The peculiar damage mentioned in the books must be directly caused by the nuisance.  It may not merely accompany it.

A case directly in point is Bridge Co. v. Smith, 30 N. Y. 44.  Here the defendants were erecting a free bridge over the Mohawk river, and for this purpose they trespassed upon the property of the state.  The plaintiff, who owned a toll bridge some 50 feet below, which would be rendered worthless by the new structure, sued to enjoin it.  The action failed because such a state of facts did not show any special or peculiar damage resulting from the trespass.  A similar result was reached in Groat v. Moak, 94 N. Y. 115.

The question as to the highway is more serious.  "An unlawful obstruction of a public highway, by an individual or a corporation, constitutes a public nuisance, and subjects the party who created or maintains it to an indictment, or to a proceeding for its abatement in behalf of the public.  But the public remedy is not, in all cases, exclusive.  An individual who has suffered special injury from the nuisance, not common to the whole public,  *  *  *  in a proper case may invoke the jurisdiction in equity to restrain its continuance." Buchholz v. Railroad Co., 148 N. Y. 640, 43 N. E. 76.  In such a case the plaintiff must allege and prove that he has sustained special damage from the nuisance, different from that sustained by the general public.  Callanan v. Gilman, 107 N. Y. 360, 14 N. E. 264.  An attempt to make such an allegation appears in the case at bar.  It is said that a highway runs from the Old Forge Company's land, from the terminus of the Fulton Chain Railroad, and from the Transportation Company's wharf, eastward, for the distance of 10 or 12 miles, to the Herkimer county line.  This highway, beginning at a point some 5 or 6 miles easterly from its western terminus, and thence east-

ward, has been unlawfully obstructed by the defendants, so as "to practically destroy said highway for its primary and intended use," and to impair and prevent "travel from the country above Old Forge, which was accustomed to come and contribute to the business" of plaintiffs, "to the special detriment and injury of the plaintiffs and their property and business aforesaid." The question is whether, in the judgment of the law, these facts show a private injury to the plaintiffs.

It has been held in this state that, although a public nuisance, an obstruction to a highway may, in some cases, be prevented by a private owner access to whose premises was thereby interfered with. In Knox v. Mayor of New York, 55 Barb. 404, a bridge was erected without authority across Broadway. The steps leading to it, among other things, obstructed access to an adjoining building, and rendered it inconvenient for goods to be taken in and out. This was held to constitute a special injury to the owner of the building. So, in Callanan v. Gilman, 107 N. Y. 360, 14 N. E. 264, and Flynn v. Taylor, 127 N. Y. 596, 28 N. E. 418, 14 L. R. A. 556, it was held that the unnecessary and unreasonable obstruction of a city sidewalk, while a public nuisance, caused special and peculiar injury to the occupant of an adjoining store. "In a populous city whatever unlawfully turns the tide of travel from the sidewalk directly in front of a retail store to the opposite side of the street is presumed to cause a special damage to the proprietor of that store, because diversion of trade inevitably follows diversion of travel." In Buchholz v. Railroad Co., 148 N. Y. 640, 43 N. E. 76, the defendant unlawfully closed the street upon which plaintiff's property was situated within a few feet of his line, thus again diverting travel. The court of appeals held in this case also that such facts would justify a finding of special damage. A similar statement of the law has been made in a number of English cases, and in many cases in other states. If, then, the plaintiffs contend the unlawful obstruction of a highway, within a few feet or a few yards of the plaintiffs' premises, thereby diverting traffic, causes such special damage as justifies relief by injunction, why may not the same obstruction, some miles away, which, in fact, has the same effect, equally justify a like relief? Special damage, however slight, is enough. If the public nuisance causes it, what logical distinction can be made as to the location of the wrongful act? The answer is, I think, that the public nuisance must result proximately in special damage to the person or property of the plaintiff. The obstruction of the Hudson at New York might lessen the receipts of a grain elevator at Buffalo; the interruption of a highway at Utica might interfere with travel at Schenectady; yet the owner of an elevator in the one city, or the proprietor of a hotel in the other, could not maintain an action. The distinction is that in the cases cited, and in such cases as De Laney v. Blizzard, 7 Hun, 7; Crooke v. Anderson, 23 Hun, 266; and Fanning v. Osborne, 102 N. Y. 441, 7 N. E. 307,—the immediate access to land is interfered with. The owner is thus deprived of a valuable property right. As the court says in Milhau v. Sharp, 27 N. Y. 611:

"The injury to result to the owners of property upon the street along which the road was proposed to be constructed would be the obstruction to the enjoy-

ment of their property, thereby causing a depreciation in its value. This is the special injury which the plaintiffs allege in their complaint. It is one peculiar to the owners of property abutting upon the street, which does not affect in the least the public in general."

In the cases used as illustrations, there is no such interference with property rights. The tide of travel may be lessened, but that is an injury which does not differ in kind from that of the public at large.

The distinction seems to be recognized in the case of Stetson v. Faxon, 19 Pick. 147. There the obstruction caused by the erection of a warehouse, projecting several feet into the street, was held to inflict special damage upon neighboring property. But the court says:

"We know that extreme cases may be put, which makes it difficult to draw the line between special and imaginary damages. Thus, suppose a ditch to be cut across Washington street at the Roxbury line; shall every holder of real estate and of shops in that street between Cornhill and Roxbury maintain an action for special damages to their estates for that nuisance? The proposition would seem to be absurd. But it would not follow that because some owners of shops, who lived a mile from the obstruction, might not have special damages, those who lived near to it might not."

The same thought is as clearly expressed in several cases in this state. In Pierce v. Dart, 7 Cow. 609, for instance, a highway was obstructed by a fence at some distance from the plaintiff's premises. In considering whether he had received special damages, the court said that it must "lay out of view the fact now set up, that the road was more contiguous, and therefore more beneficial, to the plaintiff below than to others. He might have been more injured by the obstruction on this account than others, but it is not such an injury as the law will notice. The right of action for obstructing a highway can never be determined by the distance at which the party resides from it."

In Dougherty v. Bunting, 1 Sandf. 1, it was said that to justify such an action as the present the injury must be direct and positive, as well as particular, and not consequential. In that case access to a wharf was obstructed, thus depreciating the rental value of a storehouse used in connection therewith. This was exactly the kind of injury that all property similarly situated must have sustained from the nuisance in question. It was not a direct and special injury, or such a one as can be made the basis of a private suit.

Still more in point is the able opinion in Wetmore v. Story, 22 Barb. 414. It was there held that the construction, without authority, of a railroad in a street inflicted special injury upon abutting property owners. The injury was not that passage along the street from one part to another, which is a public privilege, was interfered with, but that access to the plaintiff's buildings, a private right, was interrupted. If inflicted, the injury would be direct, and not remotely consequential. If the entrance to the Mississippi should be obstructed, it would, to some extent, impair access from the ocean to the lands of the riparian owners, "but the injury would be consequential to the interruption of a public privilege, and not directly acting upon a strictly private right." The public privilege of passing from the ocean into the river would be alone invaded, but that would not fur-

nish a valid cause of action to individuals to whom the consequences might prove injurious.

If, in the case at bar, the plaintiffs had alleged that the obstruction to the highway had as a matter of fact obliged them to use a longer route in going to and from Eagle Bay, as was done in the case of Wakeman v. Wilbur, 147 N. Y. 657, 42 N. E. 341, it is possible a recovery would have been justified. If they had alleged that the obstructed highway was the only means of access to their property, as seems to have been the fact in Iveson v. Moore, 1 Ld. Raym. 486, it is also possible that a recovery could be maintained. But, in the absence of such allegations, I am unwilling to hold that the bare statement that a highway is obstructed some miles from the plaintiffs' premises, thus impairing the use of the road for travelers, makes such a case of special damage as will justify an injunction at the suit of an individual to abate a public nuisance. Holding these views, I am constrained to find that the demurrer of the defendants must be sustained, with costs.

Demurrer sustained, with costs.