BUCHHOLZ et al. v. NEW YORK, L. E. & W. R. CO.

(Supreme Court, Appellate Division, Second Department.   April 18, 1902.)

MUNICIPAL CORPORATIONS—CONTROL OF HIGHWAYS—ALTERATION—DAMAGES.
    Plaintiffs owned a hotel facing a street near where it crossed defend-
ant railroad company's tracks.   Defendant changed the direction of the
street before it reached plaintiff's property so that it crossed the track
at another place, and the former crossing was discontinued.   The
change was made entirely on defendant's land, and the village trustees,
by resolution, accepted the new way, and discontinued the old crossing,
on certain conditions.   The village charter (Laws 1873, c. 370, § 58, as
amended by Laws 1887, c. 104) authorized the trustees to "alter" high-
ways, without requiring any formalities therefor.   *Held*, that the change
of the crossing was an "alteration" of the highway, dating from the
defendant's compliance with the conditions imposed by the village trus-
tees in their resolution of acceptance, and plaintiffs were not entitled to
damages for the obstruction of the former crossing accruing after such
compliance.

Appeal from special term, Orange county.

Action by Wilhelmina Buchholz and others, executors of the will
of Charles W. Buchholz, deceased, against the New York, Lake Erie
& Western Railroad Company.   From a judgment in favor of the
plaintiffs, the defendant appeals.   Affirmed on conditions.

Argued before GOODRICH, P. J., and BARTLETT, JENKS,
and WOODWARD, JJ.

Henry Bacon, for appellant.
Frank Lybolt, for respondents.

WOODWARD, J.   This action has been before the courts since
May, 1890, and was brought for the purpose of recovering damages
alleged to have been sustained by the original plaintiff by reason of the
closing of a certain highway in front of his premises, occupied as a
hotel.   The action was originally brought by Charles W. Buchholz
against the present defendant in May, 1890; was tried December 10,
1890, resulting in a dismissal of the complaint.   The general term
affirmed the judgment, but upon going to the court of appeals the
judgment of the courts below was reversed and a new trial granted.
Buchholz v. Railroad Co., 148 N. Y. 640, 43 N. E. 76.   The original
plaintiff dying pending the appeal, leaving a last will and testament, by
which the property was devised to his widow during her natural life,
and at her death to Clara Lindermann absolutely and in fee, and ap-
pointing Clara Lindermann and H. William Lindermann executors,
an order was made substituting the said Wilhelmina Buchholz and
Clara Lindermann as parties appellant, and subsequently the executors
were brought in.   On July 25, 1893, the defendant ceased to operate
the railroad in question, and the property went into the hands of re-
ceivers.   The action was again brought to trial in September, 1900,
at special term, and the evidence was confined to damages suffered
from the date of the abandonment of the street to the date when the
defendant ceased to operate the railroad in question, resulting in a
judgment for $600 damages, $272.50 interest, and $556.90 costs.
From the judgment entered, appeal comes to this court.

We are of opinion that the court in Buchholz v. Railroad Co., 148 N. Y. 640, 43 N. E. 76, clearly indicated the law of this case, and that it was error to allow damages to the plaintiff for losses sustained after December 17, 1891, on which date the defendant complied with the conditions named by the village of Port Jervis for accepting the alteration in the course of the street. Charles W. Buchholz, the original plaintiff, was the owner of certain premises located upon and along Main street, in the village of Port Jervis, a public street or highway of said village, which street crossed the tracks of the defendant nearly at right angles, immediately adjacent to the lands of the plaintiff. This was a grade crossing, and Main street was one of the much-traveled thoroughfares of the village. Some time prior to March 4, 1890, the defendant, for the purpose of avoiding this grade crossing, constructed a roadway over its own lands from a point on Main street west of the plaintiff's property, crossing its tracks by means of a bridge, returning to Main street at a point some distance below the plaintiff's property, and on the day mentioned threw this new way open to the public; at the same time erecting a barricade across the old roadway, and tearing up the planks at the grade crossing so that the way became practically impassable. As a result of this action the travel on Main street was diverted from in front of plaintiff's premises, and upon the case originally reaching the court of appeals it was held that the plaintiff had a right to recover the damages sustained by reason of the unlawful obstruction of the highway, but clearly intimated that if the street was altered or discontinued by the village of Port Jervis the plaintiff could not recover damages against the defendant. The original action was tried on December 10, 1890, and at that time, while the evidence showed that the village trustees of Port Jervis had passed a resolution accepting the new way and discontinuing the old portion of Main street "on condition that said railroad company, within ten days from this date, file with the clerk of said village an agreement to maintain said bridge and approaches there," there was no evidence to show that the railroad had complied with this condition. Buchholz v. Railroad Co., 148 N. Y. 647, 648, 43 N. E. 76. Upon the second trial the defendant produced evidence to show that the railroad company had filed the agreement required by the resolution, and that the trustees had been notified of this fact at a meeting of the board on January 4, 1892. The learned court at special term, notwithstanding this fact, found as a conclusion of law that the "decrease of rental value, hereby fixed and allowed at the sum of six hundred dollars, relates in this action from the time when said street was blockaded by the defendant, on the 4th day of March, 1890, up to and including the date when defendant's management and control of said railroad passed to the hands and control of receivers, to wit, the 25th day of July, 1893." The defendant excepted to the findings of fact and to the conclusion of law above stated, and we are to determine whether, as matter of law, the plaintiff was entitled to damages, as against this defendant, for the time which elapsed between the acceptance of the new roadway by the village of Port Jervis and the passing of the property of the defendant into the hands of receivers; for, as we understand it, the other questions were determined upon the previ-

ous appeal to the court of last resort. The determination in that case was that the plaintiff had a right to recover his damages up to the time of that trial, and we think the court practically held that these damages were recoverable only so long as the defendant unlawfully maintained an obstruction of Main street. The practical question to be determined here is whether the unlawful obstruction continued after the passage of the resolution by the trustees of Port Jervis, and the acceptance of the conditions stated in said resolution by the defendant, on December 17, 1891; the paper on file bearing date December 15th, as that of its execution. We think that it did not.

It is conceded that by the provisions of section 58 of the charter of the village of Port Jervis (chapter 370, Laws 1873, as amended by chapter 104, Laws 1887) the trustees had "power to lay out, open, make, improve, straighten, widen, extend, alter, repair and discontinue streets, highways, alleys, lanes, crosswalks, drains and sewers in said village, and may lay the same through any lands or enclosures, and take and appropriate the lands necessary for such improvements; and it shall be the duty of such trustees to direct and regulate the laying out, making and grading of same, and to cause the same to be repaired and cleansed from time to time upon requirements of the following section." The next section provides that before "a street or part of a street can be ordered by the trustees to be laid out, opened, extended, widened, graded, paved, macadamized, improved or discontinued by means of an assessment as hereinafter prescribed, a notice of the application," etc., must be made, with certain formalities; but it does not relate in any manner to the power to alter streets expressly granted to the trustees by section 58, and this we believe to be conclusive upon the question now before us. An alteration of a highway, as the expression is used, generally refers to a change in the course thereof, and therefore necessarily involves to some extent the establishment of a new highway, and the vacation of the part of the old highway for which the substitution is made. 15 Am. & Eng. Enc. Law, 392, 393, and authorities cited in notes 1–4. In People v. Jones, 63 N. Y. 306, the court had under consideration the provisions of chapter 455 of the Laws of 1847, and it was held that a certificate of freeholders as to the necessity of laying out or alteration of a highway through improved lands was not necessary, where the owner consents thereto, and files with the town clerk a release of damages, and that a highway running obliquely across the farm of a petitioner, near its terminus in another highway, changed by the commissioners so as to run on the line of lots, and to enter the other highway at right angles, was an alteration, not the laying out of a new road. The court say (page 310):

"We concur with the court below that the certificate of freeholders is only necessary where highways are laid out through improved land without the consent of the owners. With such consent and a release, the commissioner had power, without a jury, to lay out or alter a highway."

By section 55 of the charter of the village of Port Jervis it was provided that the village should be exempt from the jurisdiction and control of the commissoner or commissioners of highways of the town of Deerpark, "and the said village is hereby declared a sepa-

rate road district.  The trustees of said village shall be commissioners of highways in and for said village, and shall have all of the powers of commissioners of highways, subject to the provisions of this act, within the corporate bounds of said village."  The "provisions of this act" permitted the trustees to alter any highway, and this could be done in the same manner as in towns, and the language of the court in the case cited (page 310) is therefore pertinent.  The court say:

"The objection that the change made is not an alteration cannot be sustained.  The road is the same.  It does not open a new route of travel.  It makes a right angle, instead of an obtuse angle, in an existing highway. We cannot say that the public interest did not demand it.  Public convenience, the adaptability of the land for a public highway, and the expense of repairs are questions for the commissioner to determine.  The propriety of the alteration is not reviewable.  Every alteration of a highway may involve to some extent the laying out of some part of a new highway, and the necessary discontinuance of a part of an old highway; but such laying out and discontinuance are the incidents of an alteration, and not independent improvements contemplated by statute, under those definitions. At all events, the new piece of road laid out would be a highway, under the authority possessed by the commissioner to lay out highways with the assent of the owners of land, and without the aid of a jury."

See Engleman v. Longhorst, 120 N. Y. 332, 24 N. E. 476; Lincoln v. Inhabitants of Warren, 150 Mass. 309, 23 N. E. 45; Hobart v. Plymouth Co., 100 Mass. 159, 165, and authorities there cited; Marble v. Whitney, 28 N. Y. 297, 307.

It was clearly not unlawful for the railroad company to construct a roadway upon its own lands to carry the traffic over its tracks, thus avoiding the dangers of a grade-crossing; and if the defendant had left Main street as it originally existed, without obstructions, the plaintiff would have had no legal cause of complaint, although the new way might divert travel from his premises.  Buchholz v. Railroad Co., 148 N. Y. 640, 645, 43 N. E. 76.  So when the defendant petitioned the village of Port Jervis to accept this new way across its own lands, in place of the old way, it asked the village to exercise its power to alter Main street, and the acceptance of this new way operated to alter Main street.  When the defendant complied with the terms of the resolution of acceptance made by the village of Port Jervis, the alteration in the highway became the act of the village, and Main street was altered in its course, operating to discontinue that part of the old highway which passed in front of the premises of the plaintiff.  The defendant owned the fee of the land where the obstructions were maintained, and, when this portion of the old roadway ceased to be a public highway, the defendant had a legal right to close it to public travel, at least upon its own premises; and this is all that it is alleged has been done. In legal effect, the defendant has exchanged one piece of property, to be used as a highway, for another; and its obligations to the plaintiff ended when the village of Port Jervis formally accepted the new way in place of the old one, and the defendant complied with the resolution of the village, naming the terms on which the alteration should be accepted.

There appears to be no very good reason why the case should be retried, and if the plaintiff is willing to accept the rate of damages found by the learned court at special term for the time that the defendant unlawfully obstructed the highway, which was up to the time that the defendant complied with the conditions of the acceptance by the village, then the judgment may be modified in that respect, and, as so modified, affirmed. Otherwise the judgment appealed from should be reversed and a new trial granted; costs to abide the event.

Judgment reversed, and new trial granted, costs to abide the final award of costs, unless plaintiff is willing to accept the rate of damages adopted by the court at special term for the time that the defendant unlawfully obstructed the highway, in which event, judgment modified to that effect, and, as thus modified, affirmed, without costs. All concur; BARTLETT and JENKS, JJ., in result.