In the Matter of the Discontinuance of a Portion of JOINER STREET in the City of Rochester.

NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, Appellant; REBECCA ROSNER and Others, Respondents.

Fourth Department, March 14, 1917.

Municipal corporations — constitutional law — charter of the city of Rochester construed — jurisdiction of Appellate Division on appeal from determination of common council — discontinuance of street — right of owners of lots abutting on portions of street not discontinued to damages.

On an appeal pursuant to section 446 of the charter of the city of Rochester (Laws of 1907, chap. 755), as amended by Laws of 1911, chapter 384, from a resolution of the common council confirming an assessment of damages in a proceeding to discontinue a part of a street, the Appellate Division may deal with both questions of law and fact.

The Legislature may invest the common council of a city with authority to discontinue streets.

Section 121 of the charter of the city of Rochester, providing for the allowance of damages caused by discontinuance of streets, is constitutional.

The provisions of the charter of the city of Rochester are broad enough and full enough to authorize the common council, not only to discontinue the public rights in a street, but by reason of the provision for compensation for private rights destroyed, to terminate such rights and close the street.

Owners of lots abutting upon a portion of a street not discontinued who have been furnished with a modern street with all improvements, without expense to them, by which in comparatively short distances they are

Fourth Department, March, 1917. [Vol. 177.

able to reach street car lines running to the center of the city, and have been given far better facilities than they had before the discontinuance of a portion of the street, are not entitled to damages.

The mere fact that the immediate access of such owners to their premises is not from two ends of a block does not entitle them to damages. Nor does the fact that their way to some parts of the city is lengthened entitle them to relief.

The fact that the original conveyances to those from whom the present owners of lots abutting upon the portion of the street not discontinued derived their title, before the space in question became a public street, were from a common grantor who described the lots as bounded on said street, does not give the present owners of the lots, after the spaces designated became public streets, any special privileges or easements not possessed by owners of lots otherwise acquired, so as to entitle them to damages for a discontinuance of another portion of the street.

APPEAL by the New York Central and Hudson River Railroad Company from a resolution adopted by the common council of the city of Rochester on the 22d day of June, 1915, confirming the report of commissioners appointed to assess the damages in a proceeding to discontinue part of a street, which resolution was filed in the office of the clerk of the city of Rochester on the same day, and a certified copy of which was filed in the office of the clerk of the county of Monroe on the 16th day of July, 1915.

Motion by the respondents Mary C. Kosterer and others to dismiss the appeal made at the March term, 1916, and postponed to be heard in connection with this appeal.

Motion by the respondents Elizabeth Houston and others for leave to present to this court and have considered by it on the argument of this appeal, original records in the Monroe county clerk's office alleged to show more fully than now appears in the printed papers, the existence of a private easement appurtenant to their respective lots for egress southward to Central avenue through the portion of Joiner street which has been closed, postponed by order of this court to be heard in connection with this appeal.

*Leonard B. Bacon,* for the appellant.

*John J. Reilly* [*Arthur E. Sutherland* of counsel], for the respondents Houston and others.

*B. B. Cunningham, Corporation Counsel,* for the City of Rochester.

*Albert C. Olp,* for the respondents Kosterer.

DE ANGELIS, J.:

This appeal comes here pursuant to section 446 of the charter of the city of Rochester (Laws of 1907, chap. 755), as amended by chapter 384 of the Laws of 1911.

In order to enable the New York Central and Hudson River Railroad Company to build a new station and increase its rail-road facilities in connection therewith in the city of Rochester, and thereby assist in obtaining a great public improvement in such city, and in developing greater facilities for travel in, to and from such city, the common council of the city on the 26th day of April, on the 24th day of May, and on the 14th day of June, 1910, passed various ordinances. For ,the same purpose the authorities of the city of Rochester entered into certain agreements with the New York Central and Hudson River Railroad Company and the New York State Railways.

As part of the scheme for the improvement the common council discontinued the southern portion of Joiner street, and the railroad company took possession of and built upon the ground theretofore occupied by that part of the street so dis-continued, and the principal question for our consideration on this appeal is whether or not awards of damages on account of such discontinuance to the owners of lots abutting upon that part of such street not discontinued, made by the commissioners appointed for that purpose and confirmed by the resolution of the common council appealed from, should stand.

The locality principally involved in the matter is that por-tion of the city of Rochester bounded northerly by Kelly street, easterly by Joseph avenue, southerly by Central avenue, and westerly by Clinton avenue north. The new station fronts on Central avenue. This territory which I have described is an irregular figure, Central avenue and Kelly street being about parallel to each other, the part of Central avenue in the bound-ary being about 400 feet in length and the part of Kelly street in the boundary being about 800 feet in length. Central ave-nue and Kelly street form right angles with Joseph avenue.

Fourth Department, March, 1917.          [Vol. 177.

Before the work of the improvement began, Joiner street, a street 45 feet in width and about 1,350 feet in length, extended from Central avenue, passing underneath the New York Central railroad tracks northerly to Kelly street parallel to and about 250 feet easterly of Clinton avenue north. No street crossed Joiner street between Central avenue and Kelly street, although Nassau street, a street 50 feet in width which is parallel to and about 250 feet south of Kelly street, ran out from Joiner street easterly to Joseph avenue. Hamburg street, a narrow street about 30 feet in width, running from Chatham street on the east, crossed Joseph avenue and extended about 200 feet west of Joseph avenue, where it ended about 100 feet east of Joiner street without any western outlet. In the changes made Hamburg street was extended westerly to and across Joiner street to Clinton avenue north, certain portions of the street abandoned, its location somewhat changed, and it was made a street 45 feet in width from Chatham street across Joseph avenue, across Joiner street to Clinton avenue north, with all the modern street improvements, including pavement and side-walks. The portion of Joiner street discontinued was 674.4 feet in length along its easterly line northerly from the northerly line of Central avenue and 662.8 feet along the westerly line northerly from the northerly line of Central avenue. The southerly line of Hamburg street so improved intersects Joiner street about 95 feet northerly from the southerly end of Joiner street as it exists after the discontinuance of that portion of the street above described. While this portion of Joiner street south of Hamburg street has no outlet to the south, the extent of it is very slight. The result of the changes so made is that while the occupants of Joiner street have been deprived of their direct line of travel to a comparatively small part of Central avenue, they have been furnished with a modern street with all modern improvements without expense to them, by which in comparatively short distances they are able to reach street car lines running to the center of the city, the Joseph avenue car line on the east and the Clinton avenue north car line on the west. Thus they have been given far better facilities to reach the center of the city than they had before. All the expense of the changes made in the scheme of improvement was

either assessed solely on the property of or paid directly by the appellant, except the expense of the repavement in connection with the tracks of the New York State Railways in the Clinton avenue north grade alteration which was borne by that company.

The motion to dismiss the appeal is denied.

The motion to add to the record certain documentary evidence to establish the status of Joiner street upon the claim that it became a street because it was laid out and designated as a street upon the map of the land through which it runs when the land was vacant land and owned by one person who, in the conveyances of the lots sold by him, described them as abutting upon the space designated as Joiner street is also denied, as such evidence would be immaterial in the view we take of the case.

Section 446 of the charter, as amended by chapter 384 of the Laws of 1911, permits us to deal with both questions of fact and questions of law on this appeal.

Sections 111 and 121 of the charter, in express terms, clothe the common council with power to discontinue streets in the city of Rochester and adequate means to that end are provided in the charter. The Legislature had the right to invest the common council with this authority. (Dillon Mun. Corp. [5th ed.] § 1160.) Section 121 of the charter is constitutional because it provides for the allowance of damages caused by such discontinuance when such damages exist under the well-known rules applicable to municipal corporations. (See, also, charter, § 453; Id. § 436 *et seq.* as amd. by Laws of 1911, chap. 384.) There seems to be no doubt that the ordinance passed by the common council and the discontinuance of the southerly portion of Joiner street pursuant thereto were lawful. (*Weinckie* v. *N. Y. C. & H. R. R. R. Co.*, 39 N. Y. St. Repr. 584; affd. on opinion of the General Term, 133 N. Y. 656.) In that case the court, among other things, said: "The taking of land for a railroad depot is well settled to be a public purpose, and lands for that purpose may be taken by the right of eminent domain, and the rights of all abutting landowners, including those of the plaintiff, if she have any, are protected not only by this act by providing for compensation, but by the general law in the manner pre-

scribed by the Constitution.    The Legislature, in the exercise of its sovereign power, has full control of all public rights in streets, highways, and what it does, or authorizes to be done in regard to them, cannot be legally resisted, provided that no constitutional right is violated."

The provisions of the charter of the city of Rochester are broad enough and full enough to authorize the common council not only to discontinue the public rights in a street, but, by reason of the provision for compensation for private rights destroyed, to terminate such private rights and close the street. We are not concerned here with claims for damages to lots abutting on that portion of the street which has been discontinued.

In the case at bar, assuming that the abutters own the fee in that portion of the street in front of their lots to the center thereof, the discontinuance in question in no manner affects or interferes with that ownership.

The abutters south of Hamburg street have a better claim for relief than those to the north, but the mere fact that their immediate access to their premises is not from two ends of a block does not entitle them to damages.    Nor does the fact that their way to some parts of the city is lengthened entitle them to relief.    Those of them farthest from Hamburg street are much less than 100 feet from Hamburg street, a distance less than the width of many streets.    (*Coster* v. *Mayor of Albany*, 43 N. Y. 399, 414; *Matter of Grade Crossing Commissioners*, 201 id. 32; *McCabe* v. *City of New York*, 213 id. 468.)

*Egerer* v. *N. Y. C. & H. R. R. R. Co.* (130 N. Y. 108) and *Rigney* v. *N. Y. C. & H. R. R. R. Co.* (217 id. 31) are easily distinguished from the case under consideration.

It is claimed by some of the respondents, as already appears, that they had private and peculiar easements in that part of Joiner street which has been discontinued which private easements arose from the fact that the original conveyances to those from whom they derived their title came, before the space designated as Joiner street became a public street, from a common grantor who owned the land within the boundaries of and contiguous to Joiner street, and described their lots in such conveyances as bounded on Joiner street.    Let us consider this

claim briefly.    Before a strip of land designated as a street in such circumstances is accepted as a public street by a municipality, the relation between the grantor, his heirs and assigns, and the grantees of lots, and their heirs and assigns, is such that irrevocable rights are conferred upon the grantees and their heirs and assigns in the space designated as a street.   Depending upon the descriptions in the conveyances to the original grantees, they may acquire the fee to the center of the space designated as a street in front of their lots, or not, but in either case they acquire an easement in such space.   This easement has been said to extend to the right possessed by the owners of such lots to have the entire space so designated as a street and any other spaces designated as streets in the tract of land surveyed and plotted by the original owner of which the lots so conveyed are a part, kept open to their full extent as streets as against their grantor and his heirs and assigns.   But we think such would not be a reasonable interpretation of the relation thus created.   We think the rule of reason should limit this right to reasonable means of communication between the lots and the public streets, each case involving the question to be determined in view of its own peculiar elements.   In this connection we must keep steadily in mind the difference between the rights of the abutter in the space designated as a street immediately in front of his lot and his right of way beyond that space.   When a map of a tract of land is made showing such land as laid out in blocks and lots and streets according to a survey and lots are sold and conveyed by deeds in which the lots so sold and conveyed are described by reference to the map and as abutting on the spaces described as streets, what do the grantor and grantees contemplate with reference to the spaces designated as streets upon which such lots abut ?   It is certain that they desire and expect that at some time in the future the spaces designated as streets will be accepted by the public authorities as streets of the municipality in which such land is located.   Does such dedication of the spaces designated as streets give the owners of such lots after the spaces become streets of a municipality by acceptance of the public authorities any special privileges not possessed by owners of lots situated on streets otherwise acquired ?   We think not.   Such spaces so designated as streets and so

dedicated when accepted by the public authorities become
streets under the charter of the municipality and subject to all
its provisions.   If the fee to the space in the front of the lots
is conveyed to the owners of the lots, in case of the abandon-
ment of such a street by the municipal authorities the land in
such space would belong to the owners of the lots.   Aside from
such rights possessed by the owners of the lots, we see no validity
in any claim put forward by them to peculiar private rights,
differing in any respect from the rights possessed by abutting
owners upon streets having a different origin.   We see no valid
basis for the claim of the owners of lots abutting upon that
portion of Joinder street not discontinued to damages in the
circumstances disclosed by this record, assuming that they can
show all that they ask to show in their motion to add docu-
mentary evidence to the record.   The respondents rely on *Reis
v. City of New York* (188 N. Y. 58) to support their claim to
damages.   In that case the Court of Appeals held that as the
plaintiff's lots abutted upon that portion of a street which was
not closed and she had access to them by intersecting streets at
both ends of the block she suffered no actionable damage by
the closing of other parts of the street upon which her lots
abutted.   But the court was not called upon to determine
whether or not she would have suffered any actionable damage
if she had access to her lots to a more limited extent.   In
deciding the *Reis* case the court seemed to place much reliance
upon *Matter of Twenty-ninth Street* (1 Hill, 189), and this is
found in the opinion: "In *Matter of Twenty-ninth Street*
(1 Hill, 189), the grantor had sold lots and bounded the pur-
chasers by Twenty-ninth street as it was laid down on the city
map of New York.  'He could have intended nothing less by
his deeds,' said BRONSON, J., ' than a declaration that Twenty-
ninth street was, and, so far as he was concerned, should
remain a public highway.   I do not say that this dedication
will extend to all his lands in the site of the street, however
remote from the lots sold; but it will, I *think, extend to all his
lands in the same block, or, in other words, to the next cross
street or avenue on each side of the lots sold.*   The parties
must have contemplated an outlet both ways.'"

All that was decided in this *Twenty-ninth Street* case was

that a person who sold lots bounded on the site of a proposed street before it was accepted or opened by the public authorities was estopped from claiming damages for that portion of the site of the street in front of a lot which he still owned bounded on the site of the street in the same block as the lots he had sold, in a proceeding to open the street as a public street in the city of New York, on the ground that his acts were a dedication of the site for street purposes in at least the block. The case of *Taylor* v. *Hopper* (62 N. Y. 649), cited in the *Reis* case, simply decided that, as between the parties, where a grantor sold lots fronting on the site of a proposed street, his grantees were entitled to have the site in the block where the lots of the grantees were situated remain open and unobstructed. In neither of these cases was the question here involved decided, and nothing decided in either is hostile to our view of the rights of the parties in this litigation.

We think there is no sound principle upon which the resolution appealed from and the award of damages which it confirms can be sustained. We think that these claimants, especially with Hamburg street furnished for their convenience as it now exists, have sustained no actionable damages.

It follows that the resolution appealed from and the awards confirmed thereby should be vacated, set aside and held for nought, and that the claims of the respective claimants should be disallowed and dismissed, without costs.

All concurred.

Motion to dismiss appeal denied. Motion to add to record on appeal denied. Resolution of common council and the awards confirmed thereby vacated and set aside, and the claims of the respective claimants disallowed and dismissed, but, under the circumstances, without costs.