In the Matter of the Application of the CORPORATION COUNSEL OF THE CITY OF NEW YORK, for the Appointment of Commissioners of Estimate and Assessment, to Ascertain and Determine the Compensation Which Should Justly Be Made to Owners Abutting on William and North William Streets Who Have Filed Claims with the Comptroller of the City of New York for Damages for the Closing of Portions of Said William and North William Streets, etc.

THE CITY OF NEW YORK and Others, Appellants; AMALIE WOLFRAM and JULIUS HOLTZ, as Executors, etc., of CHARLES BERTHOLD WOLFRAM, Deceased, and Others, Respondents.

First Department, July 3, 1919.

Municipal corporations — city of New York — proceeding to close portions of streets and open new street — damages — opinion or expert evidence — when findings of commissioners of estimate and assessment will not be disturbed.

The city of New York closed portions of two streets and opened a new street which merely affords an opportunity for traffic in one way. *Held,* that the property owners have suffered damage.

Where it has been established that a property owner has suffered legal damage the amount of the damage and compensation therefor is to be determined by commissioners appointed by the court.

Where said commissioners have ascertained and awarded damages the power of the Appellate Division to review is very limited.

Findings of commissioners will not be disturbed, unless it is apparent that injustice has been done, or they have overlooked some material feature of the case, or have proceeded upon an erroneous principle or been

influenced by prejudice or passion. It is not sufficient that upon reading the evidence the appellate court would have arrived at a different result.

Where, because of lack of sales or a change in rentals, either because of long term leases or a general increase in rents, there was no direct evidence of the value of the lands affected, opinion evidence is not only competent, but of necessity is the only evidence capable of being introduced.

In a proceeding by the city of New York to close portions of two streets and to open a new street, *held*, that an order confirming the report of commissioners of estimate and assessment awarding damages should be affirmed.

CLARKE, P. J., and DOWLING, J., dissented, with opinion.

SEPARATE APPEALS by the City of New York and by The Press Publishing Company and others, property owners, from parts of an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 23d day of April, 1918, confirming the report of commissioners of estimate and assessment awarding damages for the closing of portions of certain streets which were under the approach to the Brooklyn bridge.

*Joel J. Squier* of counsel [*William P. Burr, Corporation Counsel*], for the appellant the City of New York.

*Truman H. Baldwin* of counsel [*Truman H. & George E. Baldwin*, attorneys], for the respondents owners north of the bridge and for the appellants owners south of the bridge.

*James J. Dunn* of counsel [*James R. Deering* with him on the brief; *Deering & Deering*, attorneys], for the respondents Zinsser Realty Company and Metropolitan Realty Company.

PAGE, J.:

The city of New York instituted the necessary proceedings to close portions of William and North William streets and to open a new street, extending from William to North William street adjacent to the Brooklyn bridge. Prior to the closing the approach to the Brooklyn bridge was arched at the intersection of these streets thus allowing traffic to pass from Duane to Frankfort street on William street, and from Park Row to Frankfort street on North William street, under the bridge. The streets were physically closed at the archway, except in William street there was a tunnel about

ten feet below the surface for the use of pedestrians, constructed under the bridge. At the Special Term and on this appeal the city contends that the damages awarded for parcels Nos. 8, 9, 10, 11, 12, 13, 20, 24, 25 and 26 are excessive and made on an erroneous theory. Parcels 8, 9, 12, 13 and 20 extend from William to North William streets, commencing 184 feet 3 inches southerly from Duane street. Parcel 10 is a gore covering the front of 11 on North William street and 11 extends from William street to lot 10. Parcels 24, 25 and 26 are on the easterly side of William street, commencing 191 feet 9½ inches southerly from Duane street. The theory of the corporation counsel is (1) that the city having opened the new street, the property owners had suffered no damage. To support this contention he relies upon *Matter of Joiner Street* [*City of Rochester*] (177 App. Div. 361). That case is clearly distinguishable from the present case. Joiner street ran parallel with Clinton avenue, north and south, and diagonally with Joseph avenue, each of which extended beyond Kelly street and Central avenue, which were the north and south boundaries respectively of Joiner street. The southern half of Joiner street was closed, but Hamburg street (a new street) was cut through from Clinton avenue to Joseph avenue, thus giving a more convenient outlet to these streets for traffic south bound than existed previously. The court very properly held that the property abutting on the unclosed portion of the street was not damaged by the closing of the street.

In the present case the new street affords no access to south-bound traffic. All that it affords is an opportunity for south-bound traffic to travel back north on a different street. In *Matter of Hoyt* (162 App. Div. 469, 474; affd., 213 N. Y. 651), Mr. Justice, now Presiding Justice, CLARKE, writing for the court said: " It would seem that property situated on a block upon an ancient public street is entitled to have access from each end of that block. As the street has not only been discontinued for a portion of the very block upon which the petitioner's property is located, but has been permanently and physically obstructed by the wall erected a few feet to the north of her property and in said block, I am of the opinion that she has presented a case within the provisions of the Street Closing Act [Laws of 1895, chap. 1006], and that she is entitled to

present her claim for damages to commissioners to be appointed, as provided by said act. ˙ This court, of course, does not at the present time pass upon the extent or the existence of any actual damage. The question is, has she established a legal right to have her claim litigated before a lawful tribunal? We think she has * * *." It being established that the property owner has suffered legal damage, the amount of the damage and the compensation therefor is to be determined by the commissioners appointed by the court. (*People ex rel. Winthrop* v. *Delany,* 120 App. Div. 801; affd., *sub nom. People ex rel. Winthrop* v. *Pendleton,* 192 N. Y. 533.) The commissioners having ascertained and awarded the damages our power of review is very limited. It is well settled that the findings of commissioners will not be disturbed, unless it is apparent that injustice has been done, or they have overlooked some material feature of the case, or have proceeded upon an erroneous principle or been influenced by prejudice or passion. (*Harlem River & Portchester R. R. Co.* v. *Reynolds,* 50 App. Div. 575; *Matter of Manhattan R. Co.* v. *Comstock,* 74 id. 341.) In addition to the testimony adduced before the commissioners, they have the advantage of a view of the premises and the locality, which the court does not have; hence it is not sufficient that upon reading the evidence we would have arrived at a different result.

The damages to some of these parcels seem to us excessive, and yet when we turn to the evidence we find the testimony of experts that the damage was much greater than the commissioners have awarded. We also find that these larger amounts have been awarded to those properties which were at the bottom of the *cul-de-sac,* and that the percentage of damage was systematically reduced as the entrance to the street was approached. The corporation counsel argues that as there had been no sales on these streets since the closing, and there was no proof that rents had been reduced, there were no facts upon which the opinion evidence of the experts could have been predicated. A moment's reflection will demonstrate the unsoundness of this argument. Had there been many sales showing a reduction in the market value, or a reduction of rentals from the time anterior to the closing there would have been little need of opinion evidence. But where because of lack

First Department, July, 1919. [Vol. 188.

of sales, or a change in rentals, either because of long-term leases or a general increase in rents in this general neighborhood, there was no direct evidence, the opinion of those whose experience, study and observation rendered them peculiarly qualified to give an opinion upon the effect of the closing of a portion of the street, renders opinion evidence not alone competent, but of necessity the only evidence capable of being introduced. The commissioners gave proper consideration to such evidence, as advisory merely, and from their own view and observation, arrived at the determination that the testimony of the city's experts (who would seem to have very little qualification as experts), that there was no damage was not entitled to any weight and that the experts called upon behalf of the property owners had given an enhanced estimate of damage, and the commissioners have given what they in their best judgment decided was the damage. While we sitting as commissioners might have given a lower award, we cannot say that the commissioners have been influenced by prejudice or passion, or that they have proceeded upon an erroneous principle or overlooked some material feature of the case. Therefore, on the city's appeal, the order should be affirmed. Two of the property owners whose property is on the other side of the bridge feel aggrieved because of the small amount awarded them. These parcels were situated on the corner of Frankfort street. At each end of the block were streets giving them an outlet north and south, and the percentage of damages awarded them is the same as given to parcel 6, which is similarly situated on the corner of Park Row and North William streets. Therefore, there would appear to have been no discrimination as against them.

The order should be affirmed, without costs.

SMITH and PHILBIN, JJ., concurred; CLARKE, P. J., and DOWLING, J., dissented.

CLARKE, P. J. (dissenting):

For closing portions of William and North William streets, where they formerly ran under the Brooklyn bridge, the city is called upon to pay $291,739.99 damages, with interest and costs — a total of $398,523.34. For the alleged damage to one parcel upon which is a large building, having access upon

one side to Rose street, which was in no way affected by the closing of William street, with an entrance on said Rose street and elevators at or near said entrance, has been awarded $154,200. Not a foot of land was taken, no physical injury was inflicted, not a window was darkened, neither light nor air was affected. The sole damage was the right of access from the south on one side. That is to say, vehicles starting from some point on William street southwesterly of the bridge approach were prevented from passing along William street under the approach to and from this property, parcel 26, and pedestrians along the same route were caused to ascend and descend twenty steps, which before the closing was not necessary. Without a word of proof of any diminution in rents, with no proof of sales, upon the mere opinion of so-called real estate experts, in violent contradiction to the opinions of the same class of witnesses called by the city, this enormous award has been made. I have no quarrel with the cases cited by my brother PAGE. That there is *legal* damage caused by the closing, of course, I admit. Drawing the rule from cited cases, he says: " It is well settled that the findings of commissioners will not be disturbed, unless it is apparent that injustice has been done, or they have overlooked some material feature of the case, or have proceeded upon an erroneous principle or been influenced by prejudice or passion." It seems to me that the very size of this award demonstrates that a great injustice has been done to the city, that the commissioners have overlooked the material features of the case and must have proceeded upon an erroneous theory. It is in evidence that unoccupied property in this immediate vicinity, likewise affected by the closing, has since that event been improved by the erection of a large and substantial building of the general character and for similar purposes to that in question. I think the award unjust and that it should not be permitted to stand. I vote to reverse the order appealed from, to refuse confirmation of the report, and to send the matter back to new commissioners to be appointed.

DOWLING, J., concurred.

Order affirmed, without costs.