In the Matter of the Application of THE GRADE CROSSING COM-
MISSIONERS OF THE CITY OF BUFFALO for the Appointment of
Commissioners, etc., in the Matter of Lands Claimed to Be
Owned by the A. SCHREIBER BREWING COMPANY and Others.

CITY OF BUFFALO and Others, Appellants; A. SCHREIBER BREWING
COMPANY and Others, Respondents.

Proceedings Nos. 120 and 125.

Fourth Department, September 17, 1924.

Railroads — municipal corporations — elimination of grade crossings —
municipal corporation and railroads are proper parties to proceedings to
determine damage to abutting owners — grade crossing commissioners
may appeal under Buffalo Grade Crossing Act (Laws of 1888, chap. 345),
§ 14, though they moved to confirm report of commissioners — closing
street so as to leave dead end constitutes, as to property abutting on dead
end, as matter of law, actionable damage under Buffalo Grade Crossing
Act, § 12, prior to amendment by Laws of 1916, chap. 576 — constitutional
law — amendment of Buffalo Grade Crossing Act, § 12, by Laws of 1916,
chap. 576, does not violate State Constitution, art. 3, § 18, relating to local
bills — said amendment does not violate United States Constitution,
art. 1, § 10, and Fourteenth Amendment, § 1, nor State Constitution,
art. 1, § 6 — damages are recoverable as to property abutting on part
of street closed — damages recoverable by owner of parcel extending
to center of street where part of land is taken and grade of street
raised and access interfered with — amount of damages awarded not
interfered with — damages may be awarded for raising grade of street
though damages were awarded prior thereto for lowering grade.

The city of Buffalo is a proper party in proceedings instituted by grade crossing
commissioners for the purpose of determining the damages caused to abutting
owners by the closing of a part of a street in the elimination of grade crossings,
and likewise the railroads whose tracks crossed the street are proper parties.

The grade crossing commissioners are entitled to prosecute an appeal from the
order confirming the report of commissioners appointed to ascertain the com-
pensation to be paid to owners and persons interested in the lands involved
in the elimination of grade crossings, since section 14 of the Buffalo Grade
Crossing Act (Laws of 1888, chap. 345) provides that either party may appeal.

The closing of a street in such a manner that property abutting thereon is left
on the dead end of the street constitutes, as a matter of law, actionable damage
under section 12 of the Buffalo Grade Crossing Act as it existed prior to the amend-
ment by chapter 576 of the Laws of 1916, where the street on which the property
abuts is an ancient street or is a street that was dedicated by map or plot and
the abutting lots were sold with reference to the map and bounded on the
street there shown.

The amendment of section 12 of the Buffalo Grade Crossing Act by chapter 576 of
the Laws of 1916, so as to provide that if a street be closed in carrying out a plan,
the owners or persons interested in the lands abutting on such street between
the point where it is closed and the nearest intersecting street shall, in such
cases where the improvement provided by said plan is under construction, be

lawfully entitled to compensation for damage to such land although it is not taken or the grade of the street in front is not changed, does not violate section 18 of article 3 of the State Constitution relating to local bills in that at the time the amendment was passed it could apply to only one improvement, which was the one in question in this case, for the constitutionality of the statute is not determined by matters outside of it but from the statute itself.

Said amendment does not violate section 10 of article 1 of the United States Constitution on the ground that it impairs the obligation of contracts, or section 1 of the Fourteenth Amendment of the United States Constitution on the ground that it denies the railroads equal protection of the laws, or section 6 of article 1 of the State Constitution on the ground that it deprives the railroads of property without due process of law, though the contract under which the improvement in question was made was entered into by the railroads prior to said amendment.

The owner of a parcel of land abutting upon that portion of the street which was actually closed to traffic is entitled to damages under section 12 of the Buffalo Grade Crossing Act, as amended.

The owner of a parcel of land abutting on the street who owns to the center of the street is entitled to damages, since it appears that the effect of the agreement between the grade crossing commissioners and the railroads is to take a part of his land and raise the grade of the street in front of his property and narrow and diminish the street area in front thereof, for the taking of that part of the land which lay within the street was incidental to the closing of the street and the narrowing of the street interferes with the access to the lot and is a direct damage.

The Appellate Division will not interfere with the amount of damages awarded on the ground that the commissioners made an award based on the diversion of public travel in front of those parcels abutting the dead end of the street between the nearest street intersection and the point where the street was closed, since the commissioners distinctly stated that they made no award for damages arising from a diversion of traffic. And, though the damages awarded on a legal basis may seem large, the Appellate Division will not interfere in the absence of some showing that the commissioners committed an injustice or that they overlooked some material feature of the case or proceeded upon an erroneous principle or were influenced by prejudice or passion.

The fact that the owner of one parcel of land abutting on the street was awarded damages when the grade of the street was lowered some years prior to the present proceeding does not deprive him of the right to damages for raising the grade in the present proceeding.

APPEALS by the City of Buffalo and others from the report of commissioners, appointed to ascertain the compensation to be paid to owners and persons interested in the lands involved in said proceedings, filed in the office of the clerk of the county of Erie on the 3d day of January, 1923, and also from an order of the Supreme Court, made at the Erie Special Term and entered in said clerk's office on the 12th day of June, 1923, confirming said report and denying the motion of the city of Buffalo, joined in by the railroads, to vacate said report, with notice of intention on the part of said railroads (as stated in their notices of appeal) to bring up for review the interlocutory orders appointing commissioners.

By virtue of chapter 231 of the Laws of 1923 the Grade Crossing Commissioners of the City of Buffalo were superseded by the Grade Crossing and Terminal Station Commission of the City of Buffalo.

*William S. Rann*, Corporation Counsel [*Jeremiah J. Hurley* of counsel], for the appellant City of Buffalo.

*De Witt Clinton* [*Myron S. Short* of counsel], for the appellant Grade Crossing and Terminal Station Commission.

*Kenefick, Cooke, Mitchell & Bass*, for the appellants Lehigh Valley Railroad Company and Lehigh Valley Railway Company.

*Locke, Babcock, Spratt & Hollister* [*Louis L. Babcock* of counsel], for the appellant Delaware, Lackawanna and Western Railroad Company.

*Frank Rumsey*, for the appellant Western New York and Pennsylvania Railroad Company.

*Simon Fleischmann* and *Benjamin S. Dean*, for the respondents Henry A. Kamman and another.

*Shire & Jellinek* [*Joseph Swart* and *Edward L. Jellinek* of counsel], for the respondent A. Schreiber Brewing Company.

*Edward E. Tanner*, for the respondents Emma G. Tiffany and others.

*Dudley, Stowe & Sawyer*, for the respondents Mary P. Box, as executors, etc.

*Frank F. Williams*, for the respondent Frank L. Danforth and another.

CROUCH, J.:

For upwards of sixty years prior to the improvement involved herein, Bailey avenue extended in a northerly direction from Abbott road to the north line of the city of Buffalo, a distance of five or six miles. In its course it intersected Seneca street and Clinton street at approximately right angles. In the block between those two streets, Bailey avenue was crossed at grade by the Pennsylvania railroad running east and west and by the Delaware, Lackawanna and Western railroad running northeast and southwest. These railroads intersected at grade just easterly of Bailey avenue. The Lehigh Valley railroad in the same block crossed Bailey avenue and the other two railroads by an overhead crossing.

On or before June 19, 1914, the grade crossing commissioners of the city of Buffalo adopted a plan for the elimination of those crossings, by which Bailey avenue was to be diverted from or just

north of the Pennsylvania right of way by a viaduct over the Pennsylvania tracks, thence to the west parallel with the Lehigh Valley tracks, thence underneath the Lehigh Valley tracks and in a southerly direction to Seneca street. Original Bailey avenue was to be closed between the north line of the Pennsylvania right of way and the southerly line of the Delaware, Lackawanna and Western right of way.

Out of that plan grew three proceedings, known as No. 112, No. 120 and No. 125. Proceeding No. 112 related to damages for the land taken in connection with the diverted portion of Bailey avenue. Proceeding No. 120 related to damages caused by the closing of Bailey avenue and minor matters incidental thereto. Proceeding No. 125 related to damages caused by a change of grade in Seneca street between diverted Bailey avenue and original Bailey avenue.

We are not concerned here with proceeding No. 112. In proceedings Nos. 120 and 125 the petitions were made by the chairman of the grade crossing commissioners. Answers were interposed by certain of the parties, trial was had before Mr. Justice COLE, and the various questions of law thus arising were considered and determined by him in a written opinion. No formal decision was entered. Subsequently orders were made appointing three commissioners to determine the compensations to be paid to the owners and parties interested in certain of the parcels as so determined. Hearings were had, testimony given and a report made, which upon the motion of the grade crossing commission was confirmed and a cross-motion to vacate was denied. From that report and the order confirming it and denying the motion to vacate, the appeals come here.

Certain preliminary objections to the appeals were interposed by one of the respondents, which may be briefly noticed and over-ruled. The city of Buffalo may perhaps be said to have been technically a necessary party as a tax lienor and in any event was a proper party. Likewise the railroads were proper though not necessary parties, and had a right to answer, demur and defend as an incident to their interest. (*Matter of Grade Crossing Commissioners*, 166 N. Y. 76.) The grade crossing commissioners were properly petitioners; and the fact that they moved to confirm the report does not prevent their appeal. Section 12 of the Buffalo Grade Crossing Act (Laws of 1888, chap. 345, as amd. by Laws of 1890, chap. 255; Laws of 1911, chap. 358, and Laws of 1916, chap. 576) gives any party interested the right to move for confirmation, and section 14 (as amd. by Laws of 1890, chap. 255, and Laws of 1911, chap. 358) says that "either [any?] party may appeal." The requirement is not, as in Civil Practice Act, section 557, **that**

Fourth Department, September, 1924. [Vol. 210

" a party aggrieved " may appeal. The practice in any event is sanctioned by long usage. (See *Matter of Grade Crossing Commissioners*, 154 N. Y. 550, where, on page 556, it appears that the grade crossing commissioners moved to confirm and yet appealed, though without any particular grievance.)

In proceeding No. 120 six separate parcels of land, known as parcels Nos. 1, 2, 3, 6, 7 and 8, are involved. Because of varying physical facts, it will be convenient to divide those parcels into three groups and to discuss the questions before us in connection with each group.

I. *Parcels 1, 2, 7 and 8.* By the closing of Bailey avenue that portion of the block between Seneca street and Clinton street which lies between Seneca street and the southerly line of the Delaware, Lackawanna and Western right of way was left as a dead end. No passage either direct or by means of an intersecting way was left to the north. To go north it is necessary first to go south to Seneca street, thence west about 400 feet to the point where diverted Bailey avenue began, and thence north over diverted Bailey avenue until original Bailey avenue was again reached north of the closed portion. These four parcels abut on that dead end. There was no change of grade; the street remains open in front; no part of the land was taken. But obviously they have been depreciated in value. The stream of traffic has been diverted. Access to and from the north is by a longer and roundabout route. Do those things constitute actionable damage?

The report of the commissioners says that " they have not allowed any damages to the property owners by reason of the diversion of public traffic caused by reason of the improvement." It is unnecessary, therefore, to discuss at length the question of whether such damages are actionable; but the subject will be briefly hereinafter referred to.

Whether the complete closing of the street to the north, under the circumstances here involved, constitutes actionable damage is to be considered in two aspects:

*First*, under the Buffalo Grade Crossing Act as it stood prior to an amendment made to section 12 thereof by chapter 576 of the Laws of 1916.

*Second*, under the amended section.

1. Section 12, so far as pertinent here, read, before the amendment, as follows: " If the commissioners shall decide that it is necessary for the purpose of carrying out any plan * * * that any street shall be closed * * * and that any property may be injured thereby for which the owners or persons interested therein are lawfully entitled to compensation * * * the com-

missioners, by their chairman, may apply * * * for the appointment of three commissioners to ascertain the compensation therefor to be paid," etc.

The interpretation of that section first came before the Court of Appeals in *Matter of Grade Crossing Commissioners* (154 N. Y. 558), but the question was left open.   The court said, in substance, that a literal construction of the words " are lawfully entitled " would confine the damages to such as were recognized by law when the act was passed, while a liberal construction, in connection with the entire act, would lead toward the meaning that the owners of land injured " are lawfully entitled " to compensation *under the act.*

In *Matter of Grade Crossing Commissioners* (166 N. Y. 69) the court took the literal interpretation, saying, " It refers to *existing* grounds for lawful compensation and adds this remedy."

Relying upon that interpretation, appellants say that under the law as it existed when the act was passed, the closing of the passage to the north alone did not deprive the owners of any vested right and did not cause an injury for which they were lawfully entitled to compensation.   For this proposition they cite a line of cases going back to *Coster* v. *Mayor, etc., of Albany* (43 N. Y. 399).   (See, among other cases, *Fearing* v. *Irwin*, 55 N. Y. 486; *Kings County Fire Ins. Co.* v. *Stevens*, 101 id. 411; *Matter of Grade Crossing Commissioners*, 166 id. 69; *Matter of Joiner Street* [*City of Rochester*], 177 App. Div. 361; *City of Corning* v. *O'Neill*, 180 id. 454.)

In *Fearing* v. *Irwin* (*supra*) the holding in the *Coster Case* (*supra*) is said (p. 490) to have been " that, though one public way to property is closed, if there is another left, the property owner sustains no actionable damage."

In *Kings County Fire Ins. Co.* v. *Stevens* (*supra*) it is said (p. 418) that " the rule preserves access, but does not give two modes of access and a double right of way."

The rule seems to have ossified into some such form, based on the theory stated in an early Massachusetts case (*Smith* v. *City of Boston*, 7 Cush. 254) that an owner of land abutting on a street closed in one direction but open in the other may suffer damage greater in degree but not differing in kind from that of the general public; and hence not peculiar and special to himself.

Many of the cases which repeat the rule, and cite the *Coster Case* (*supra*), may be distinguished on the facts in that access in both directions was left, though by a longer and roundabout way. Such, for instance, seems to have been the fact in *Matter of Grade Crossing Commissioners* (166 N. Y. 69).

But the rule seems still to exist and must be recognized until there is express authority to the contrary.

However, respondents rely upon an exception to the rule applicable to cases where the closed street is a street dedicated by map or plot, and where the lot was sold with reference to the map, and bounded on the street there shown, thus giving rise to a private easement. Typical and apparently authoritative cases under this exception are *Reis* v. *City of New York* (188 N. Y. 58); *Matter of Hoyt* (162 App. Div. 469; affd., 213 N. Y. 651); *Matter of City of New York* (*Sedgwick Ave.*) (Id. 438, 442).

At this point it will be well to notice the decision of this court in *Matter of Joiner Street* (*supra*). The opinion apparently rejects the exception, which seems to be well established by the cases last above referred to. The actual decision, however, was in effect simply that *upon the facts* there was no actual damage proved.

It is the claim of the owners of the four parcels in question here that the Ogden Land Company was the owner of the entire tract of land embracing the fee of the present Bailey avenue, and the land on both sides thereof, at the time of the filing of the map in 1844; that these lots are shown on the map as fronting on the road now known as Bailey avenue, between Seneca and Clinton streets, and that they were deeded with reference thereto. They contend, therefore, that they fall within the rule in the *Reis* and *Hoyt Cases* (*supra*), and that since no outlet to the north has been provided, they have suffered actionable damage.

Whether the road now known as Bailey avenue was dedicated by the map of 1844, or whether it had existed as a highway before that, is not entirely clear. Counsel for the city cites *Wheeler* v. *Clark* (58 N. Y. 267) as authority for the statement that no private easement can be inferred by reason of the subdivision of lands on each side of a public street; and hence argues that if the lots here were laid out with reference to Bailey avenue as a then existing public street, the exception to the rule does not apply.

But, as against this, the exception seems to have been extended to ancient streets by *Matter of Hoyt* (*supra*) and *Matter of Corporation Counsel of City of New York* (188 App. Div. 668).

The conclusion on this branch of the case is that the total closing of the street to the north, between the properties in question and the next intersecting street to the north, might, even under the act prior to amendment, constitute, as matter of law, actionable damage. Whether, as matter of fact, the value of these lots was depreciated by that deprivation of access, and if so, to what extent, will be dealt with hereafter.

2. *The amendment of 1916.* By chapter 576 of the Laws of 1916 there was inserted in section 12, immediately following that portion thereof above quoted, the following provision: " If a street be closed in carrying out a plan, * * * the owners or persons interested in the lands abutting on such street between the point where such street is closed and the nearest intersecting street, shall, in such cases where the improvement provided by said plan * * * is now under construction, be lawfully entitled to compensation for the damage to such land although such land be not taken or the grade of the street in front thereof changed."

The constitutionality of this amendment is attacked by the railroads. It is said to be invalid, *first*, as offending article 3, section 18, of the Constitution of the State of New York, relating to prohibited local bills. It is said that the amendment applies by its terms only to cases " now under construction," and that the only improvement to which it was then applicable was the Bailey avenue improvement. It does appear that there were two other jobs which were then being finished up. However, the constitutionality of a statute is not determined by matters outside of the statute, but from the statute itself. We have here a statute which on its face complies with the usual standards by which general laws are tested. We think this objection does not avail. (*Kittinger* v. *Buffalo Traction Co.*, 160 N. Y. 377, 397.)

*Second,* under article 1, section 10, of the United States Constitution, as impairing the obligation of a contract; and under section 1 of the Fourteenth Amendment of the United States Constitution, as denying the railroads equal protection of the laws; and under the same section, as well as under section 6 of article 1 of the Constitution of New York, as depriving the railroads of property without due process of law.

It is necessary to say here that the work on the improvement was undertaken under the usual form of contract in effect April 8, 1915, made pursuant to the terms of the Buffalo Grade Crossing Act between the grade crossing commissioners and the three railroads.

If we are right in our conclusion that the damages resulting from the closing of the street were actionable before the amendment of 1916, then the constitutional objections, even though sound, are unavailing. But we think they are not sound, so far, at least, as the respondents are concerned, even on the assumption that the amendment made actionable damages for which theretofore there had been no remedy. The extent of the damages and the right to compensation did not depend on the contract, nor could they be affected by the contract. Under section 9 of the

Buffalo Grade Crossing Act (as amd. by Laws of 1890, chap. 255; Laws of 1892, chap. 353, and Laws of 1911, chap. 358), the railroads had the option of entering into a contract with the city relating to the apportionment of the work and expenses, or to let the question be determined by the court in specified proceedings. The contract which was made contemplated damages from the closing of the street. There is nothing to indicate that the apportionment agreed upon would have been different had the contract been made subsequent to the amendment. We are unable to see that any right of the railroads has been affected by the amendment. (*Matter of Borup,* 182 N. Y. 222; *People ex rel. Burhans* v. *City of New York,* 198 id. 439; *Matter of Andersen,* 178 id. 416; *People ex rel. Central Trust Co.* v. *Prendergast,* 202 id. 188.) The effect of the amendment was, as to property falling under the rule in the *Coster Case* (*supra*), to make actionable those damages resulting from the closing of a street, not in front of the premises, but between the premises and an intersecting street; and as to property falling under the exception to that rule where there is a private easement, to declare what was already the law. A literal interpretation such as was applied to the original act by the decision in *Matter of Grade Crossing Commissioners* (166 N. Y. 69) would deprive the amendment of all meaning.

II. *Parcel No. 3.* This parcel abutted upon that portion of Bailey avenue which was closed. It has been entirely deprived of ingress and egress. It, therefore, falls within the rule stated in *Egerer* v. *New York Central & H. R. R. Co.* (130 N. Y. 108). The objection that the proceeding here rests solely upon the 1916 amendment to section 12 and is concerned only with damages arising from the closing of the street between the premises and the next intersecting street, is without merit.

III. *Parcel No. 6.* This parcel is a considerable tract of land lying east of Bailey avenue and east of the Delaware, Lackawanna and Western right of way. Prior to the improvement there was a frontage on Bailey avenue of about 182 feet. Except for the fact that the Delaware, Lackawanna and Western crossed the street about there, at a sharp angle, the street of course was open in front for its entire width.

Since the improvement a fence has been constructed along the easterly line of the Delaware, Lackawanna and Western right of way, across Bailey avenue. While this does not actually take away any of the frontage of parcel 6 on Bailey avenue, it does narrow and diminish the street area in front of that abutting portion of the parcel. It further appears that the owner of parcel 6 has title to the fee to the center line of the street. By the terms

of the 10th clause of the contract between the grade crossing commissioners and the railroad companies, Bailey avenue, to the extent shown upon the plans, was to be closed, and the ground forming part of the street between the exterior lines of the street and the exterior of the right of way of the railroads, extended across the same, was to be abandoned for street purposes, and was to be inclosed by the railroads as part of their right of way, *to be exclusively used by them*, etc. Neither the report nor the order deals with this particular matter. However, it appears that the Delaware, Lackawanna and Western did extend the fence along its right of way across Bailey avenue, and is in actual occupation of that portion of the ground which was formerly the street; and that that includes a small triangular piece east of the center line of Bailey avenue, the fee of which was in the owner of parcel No. 6. Moreover, it appears that as part of the general improvement, the Delaware, Lackawanna and Western viaduct over Seneca street was raised several feet, and that involved raising the grade of the Delaware, Lackawanna and Western tracks. Accordingly the grade of that portion of Bailey avenue inclosed within the fence has been raised about two feet.

Counsel for the owner claims, therefore, (a) that a part of his land has been taken; (b) that the grade of the street has been raised; (c) that light, air and direct access to the lot from the front has been interfered with by the closing of the street and the erection of the fence; (d) that the outlet to the north has been closed.

The objection is made by the railroads to a consideration of claims (a) and (b), upon the ground that the proceeding here relates solely to damages arising from the closing of the street. But the taking of the small triangular piece of land which was part of the street and the raising of the railroad tracks may be said to have been incidental to the closing of the street by the construction of the fence. Claim (c) is valid. The narrowing of the street interferes with the access to the lot and is direct damage. (*People ex rel. Winthrop* v. *Delany*, 120 App. Div. 801; affd., 192 N. Y. 533.) Claim (d) is of the same nature as that considered in connection with parcels Nos. 1, 2, 7 and 8, and is valid.

IV. Aside from the matters already considered, the point most strongly attacked by appellants is the amount of the awards made by the commissioners. It is said that they are excessive, because the evidence shows that the chief factor in the depreciation of values, except as to parcel 3, was the diversion of public travel on Bailey avenue, which was not and could not properly have been considered. Whether that is an element which could have

been considered is an interesting question. The authorities differ. (Lewis Em. Dom. [3d ed.] § 199, and cases cited.) In *Matter of Mayor, etc., of New York (Walton Ave.)* (131 App. Div. 696; affd., 197 N. Y. 518), at page 712 it is said: " Their damages consisted in the depreciation of the value of their lands by the legal closing of the avenues and street and the termination of every right they had to have them maintained as public avenues or streets or to use the same for ingress or egress to their respective parcels."

To the effect that diversion of traffic is a proper element, see 13 R. C. L. 75; 2 Nichols Em. Dom. § 323; *Park City Yacht Club v. Bridgeport* (85 Conn. 366; 82 Atl. Rep. 1035; 39 L. R. A. [N. S.] 478); *Matter of Melon Street* (182 Penn. St. 397).

The rule almost universally applied is that those damages can be recovered which could have been recovered at common law had the acts which caused them been done without statutory authority. (Lewis Em. Dom. [3d ed.] § 199.) Under facts very similar to those here, injury to business was the basis of damages allowed in an action against a railroad. (*Buchholz v. New York, Lake Erie & Western R. R. Co.*, 148 N. Y. 640.)

On principle there seems to be little distinction between injury to business arising from diversion of traffic and injury to the land value arising from the same cause.

It is doubtful whether it is humanly possible to put into terms of dollars and cents separate damages arising from different causes. The commissioners say they made no award for damages arising from diversion of traffic. If, for the other element alone, some of the awards seem large, we are yet unable to say that the error is of a character to warrant an attempt at correction by this court. In *Matter of Corporation Counsel of City of New York* (188 App. Div. 668; appeal dismissed, 228 N. Y. 523), in dealing with a like case, the court says: " The commissioners having ascertained and awarded the damages our power of review is very limited. It is well settled that the findings of commissioners will not be disturbed, unless it is apparent that injustice has been done, or they have overlooked some material feature of the case, or have proceeded upon an erroneous principle or been influenced by prejudice or passion. (*Harlem River & Portchester R. R. Co. v. Reynolds*, 50 App. Div. 575; *Matter of Manhattan R. Co. v. Comstock*, 74 id. 341.)"

In proceeding No. 125, but one parcel, known as the Tiffany property, is involved. It is located on the southwest corner of Bailey avenue and Seneca street. As part of the improvement, the grade of Seneca street west from original Bailey avenue under the Delaware, Lackawanna and Western railroad viaduct was raised several feet, and as an incident there was a certain change

of grade also for a distance of thirty-five feet south from the corner on the Bailey avenue front of this parcel. Changes were also made in the number and location of the catch basins in the two streets receiving the surface drainage waters. It is claimed that by reason of those changes the drainage from the lot and from the street in front of the lot is interfered with, causing an accumulation of surface waters in times of storm. In 1901, when the grade of Seneca street was lowered, an award of damages caused thereby was made to this parcel. It is urged that a partial restoration of the old grade could cause no damage. This is not necessarily so. We are disposed to accept the judgment of the commissioners, who as to this parcel had the right to and did view the premises, in addition to considering the evidence on the point.

The report of the commissioners and the order of the Special Term confirming the same should be affirmed, with costs.

Hubbs, P. J., Clark and Davis, JJ., concur; Sears, J., not sitting.

Report of commissioners and order confirming same affirmed, with costs.