■ MUNICIPAL HOUSING AUTHORITY FOR THE CITY OF YONKERS, Respondent. v. ELIZABETH P. F. HARLAN et al., Appellants; THE PEOPLE OF THE STATE OF NEW YORK, Respondent, et al., Defendants.— In a condemnation proceeding, certain of the claimants, that is, those defendants who are the heirs of their remote ancestor, Ethan Flagg, appeal from so much of a final order of the Supreme Court, Westchester County, entered September 3, 1964, as confirmed the report of commissioners of appraisal and awarded to appellants the nominal sum of 10 cents per square foot or a total sum of $1,155 as fair and adequate compensation for their property taken by the plaintiff. Order modified on the law and the facts by increasing the aggregate award to appellants from $1,155 to $11,554. As so modified, the order, insofar as appealed from, affirmed, with costs to appellants; and proceeding remitted to the Special Term for the purpose of making an appropriate decree apportioning the increased award among the various persons entitled thereto, and for further proceedings not inconsistent herewith. Findings of fact implicit in the court's decision and in the commissioners' report, which may be inconsistent

herewith, are reversed; and new findings are made as indicated herein. In our opinion, the appellants were entitled to receive the sum of $1 a square foot for their property, the amount paid by plaintiff Housing Authority for the abutting land in Blocks 478 and 479. While appellants' property consisted of the former bed of a street, such street had been discontinued as of March 13, 1962, by enactment of a local ordinance by the Common Council of the City of Yonkers, with due provision for payment of damages to abutting owners. Concededly, the title of appellants' ancestors reverted to appellants by the enactment of this ordinance. At the same time, as holder of the abutting lands or as a party entitled to possession thereof under a prior condemnation decree, the plaintiff by virtue of this ordinance was entitled to damages for the closing of the street. Despite such rights, the plaintiff, as a matter of comity, elected to forego any claim for damages, since it was an adjunct of the City of Yonkers and since it was the city which was obligated to pay such damages under the ordinance. The plaintiff's election to waive its claim for damages, however, did not preserve its prior right of easement of access over appellants' land in the bed of the street. Under the case law, the enactment of the ordinance with appropriate provision for the payment of damages, pursuant to the City of Yonkers' statutory authority to close a street, served to extinguish all easements, public and private, in the thoroughfare closed (*Barber* v. *Woolf*, 216 N. Y. 7, 16; *Crossin* v. *Woolf*, 182 App. Div. 607, 608; *Matter of Joiner St.* [*City of Rochester*], 177 App. Div. 361, 366; *Wells & Riv. Holding Corp.* v. *Otis Elevator Co.*, 5 A D 2d 883). As reversionary owners, the appellants thereupon became entitled to the land free from any easement rights either in the public at large or in specific private persons (2 Nichols, Eminent Domain [rev. 3d ed.], § 6.32, subd [1], p. 419; 3 Nichols, *op. cit.*, § 9.36, subd. [1], p. 327). Hence, from the date of the enactment of the ordinance the appellants possessed an unincumbered fee title to the bed of the street, such title having duly reverted to them. Accordingly, in November, 1962, when plaintiff Housing Authority commenced the instant condemnation proceeding to acquire title to the bed of the street, or on February 5, 1963, when title thereto was vested, the appellants were entitled to an award equivalent to the value of their premises on the date of appropriation (*Matter of County of Westchester*, 204 Misc. 1031, 1040). Upon the proof adduced, the appellants' property was then capable of use for building purposes under local law. This element of potential available use had to be considered in the valuation of their property (*Matter of City of New York* [*Inwood Hill Park*], 230 App. Div. 41, 44–46; *Valley Stream Lawns* v. *State of New York*, 9 A D 2d 149, 152). Under the circumstances, in view of the proof: (a) that plaintiff had paid $1 a square foot for land in abutting Blocks 478 and 479, and (b) that appellants' property was worth no less than the abutting property which was landlocked whereas appellants' land faced out on at least one remaining public street, the uncontested testimony of appellants' expert of $1 a square foot in value should be accepted because it furnishes "the only tenable method of fixing value" (*Matter of City of New York* [*Kramer Realty*], 16 A D 2d 148, 150). In view of all the proof, the plaintiff's theory that appellants' property was subject to easement rights in abutting owners is untenable, and the plaintiff's evidence of nominal value of 10 cents a square foot is immaterial. Brennan, Hill and Rabin, JJ., concur; Beldock, P. J., and Benjamin, J., dissent and vote to affirm the order, with the following memorandum: The subject property is a strip of land 50 feet wide and approximately 230 feet long, in the City of Yonkers. In 1859, it was owned by one Ethan Flagg, a remote ancestor of the present claimants. In that year, at the express request of Flagg and 15 of his neighbors, the then Village of

Yonkers formally laid out a public highway, called School Street, over the subject property and certain adjoining parcels. Flagg did not deed the fee to the village, so title to the bed of the street remained in him and descended to his heirs. That title, of course, was burdened with the easement of public street use of the property. In 1961 plaintiff, the Municipal Housing Authority of the City of Yonkers (an arm of the city), condemned the land on both sides of School Street for a public housing project. To complete the parcel required for that project, it was necessary to acquire School Street as well. On March 13, 1962 the city's Common Council adopted an ordinance discontinuing School Street as a public street, and giving abutting owners six weeks to file claims for damages from the street closing. It is undisputed that the street was discontinued solely to facilitate and make legally possible the use of the bed of the street for the contemplated public housing project. As the only abutting owner was the Housing Authority, no claims for damages were filed. In November, 1962, the Housing Authority condemned the bed of School Street for the public housing project, and Special Term awarded relatively nominal damages of 10 cents a square foot to the claimants, who, as the descendants of Flagg, owned the bed of the street. We think that award was adequate and should not be disturbed. It is clear that the bed of School Street had only a nominal value during the century that the street was open and in use as a public street, since the fee was burdened with an easement for street uses. And if the city had chosen to condemn the bed of the street for street purposes at any time during those hundred years, the owners of the fee would have been entitled to nominal damages only. This, the city could have done, and it could thereafter have discontinued the street and transferred the land to the Housing Authority for the public housing project without being subjected to any further claims by the previous owners of the bed of the street. But the city did not follow that course. Instead, it chose the alternative procedure of first discontinuing the street and then having its adjunct (the Municipal Housing Authority) condemn the bed of the street for its public housing project. We do not deny that during the brief interval between the city's closing of the street and the Housing Authority's condemnation of the street, the claimants (descendants of Flagg) owned the bed of the street technically and theoretically free of the street easement. But we do not see how, in actual fact, such temporary unincumbered ownership was increased in value from nominal to substantial or equitably entitled the claimants to more than nominal damages. In a condemnation proceeding, the claimants are entitled only to "just compensation" (N. Y. State Const., art. I, § 7). In determining what is "just compensation", the courts apply equitable principles and "endeavor to weight the justice and fairness between the condemnor and the condemnee, and attempt to arrive at a valuation which they deem to be fair and equitable to both parties" (Jahr, Eminent Domain, pp. 93–94). "Each case necessarily involves different facts and must be considered by itself", and the usual rules "must yield to exceptional circumstances" (*Matter of Board of Water Supply of the City of N. Y.*, 277 N. Y. 452, 456). And the Housing Authority cannot "be made to pay for a loss of theoretical creation, suffered by no one in fact" (*Boston Chamber of Commerce* v. *Boston,* 217 U. S. 189, 194, HOLMES, J.). In the present case, the bed of the street had no *actual or true* value between the time the street was discontinued and the time it was condemned by the Housing Authority. It was well known that the street was discontinued solely for the purpose of using the land for the substitute public purpose of a public housing project. Hence, during that brief period the land was not *actually* available or marketable for private industrial or residential use. Under the unusual circumstances here present, its value for such use was

theoretical only. And even that fictitious value stemmed only from the technicalities of the procedure followed by the city in converting that land from a public street use to a public housing use. To give the remote descendants of Flagg a "windfall" in the form of a substantial award for the purely fictitious and theoretical "value" of the subject land would, on the facts in this case, be grossly unfair to the condemnor, a perversion of equitable principles, and a distortion of the concept of "just compensation." In our opinion, they are entitled to nominal damages only.