Alfred L. Goldberger, Esq. Corporation Counsel, Schenectady
You have asked whether the City of Schenectady may periodically barricade certain roads in a public park maintained by the city.
Your inquiry states that the park in question is Central Park, located in the City of Schenectady. It was created in 1913 and is currently maintained by the city (see Matter of Central Parkway, 140 Misc. 727 [Sup Ct, Schenectady Co, 1931]). You indicate that the roads were laid down when the park was established and that it was the intention of the city at the time that the roads be used by vehicles in the park, not as a path for drivers merely wishing to cross the park. Over the years, the roads have been used in both ways. The city is now proposing to erect barricades at the entrances to certain roads in the park so that portions of these roads will not be accessible to vehicular traffic during the warm weather season. Your question is whether the city has the authority to do this. You have informed us that the city has no charter provisions or local law governing road closure.
By way of background, regulation and control of streets and highway traffic within a municipality are matters of State concern and are governmental functions exclusively within the power of the State as sovereign, except to the extent the Legislature has delegated such powers to political subdivisions (People v Grant, 306 N.Y. 258, 260 [1954]). The provisions of the Vehicle and Traffic Law are applicable and uniform throughout the State (Vehicle and Traffic Law, § 1600). Local governments are prohibited from enforcing any local law, ordinance, rule or regulation in conflict with or superseding the Vehicle and Traffic Law unless the Vehicle and Traffic Law expressly authorizes them to do so (ibid.).
Subdivision 13 of section 1640 of the Vehicle and Traffic Law gives cities and villages the authority to "[p]rohibit or regulate the operation and the stopping, standing or parking of vehicles in cemeteries and in public parks". In a 1985 opinion, we found that a municipality's power to ban trucks absolutely from its roads necessarily included the power to ban only truck parking on town roads (Op Atty Gen No. 85-4). For similar reasons, we conclude that the city may exercise partially its power to prohibit the operation of motor vehicles within the park by closing off the roads during certain times of the year.*
Furthermore, section 20(7) of the General City Law also provides a basis for temporary closure of roads within the city park. The section reads in relevant part as follows:
 "To lay out, establish, construct, maintain, operate, alter and discontinue streets, sewers and drainage systems, water supply systems, and lighting systems, for lighting streets, public buildings and public places, and to lay out, establish, construct, maintain and operate markets, parks, playgrounds and public places . . ." (General City Law, § 20[7]; emphasis supplied).
This section has been relied on by the courts to authorize cities to discontinue roads and streets (Matter of Joiner Street, 177 App. Div. 361,365-366 [4th Dept, 1917]; Matter of Central Parkway, 140 Misc. 727,729-730 [Sup Ct, Schenectady Co, 1931]; see, also, 1972 Op Atty Gen [Inf] 194; 1966 Op Atty Gen [Inf] 74). It is clear that the city has the authority to close, permanently and for all purposes, streets within the City of Schenectady. We believe this authority also includes the authority to close streets temporarily; in this instance, during the summer months when the park is heavily used by pedestrians.
The fact that these streets are located within a park does not affect the city's authority to close them temporarily. Land dedicated for public park or recreational purposes may not be sold or diverted to other uses without authorization by the State Legislature (Miller v City of NewYork, 15 N.Y.2d 34, 37 [1964]; 1984 Op Atty Gen [Inf] 93). This rule does not affect the city's authority inasmuch as closure of streets within the park under these circumstances does not constitute the "sale or diversion to other purposes" of the park land. As your letter indicates, the city seeks only to close the streets during the summer in order to prevent them from becoming busy thoroughfares. If anything, this action is intended to maintain the bucolic nature of the park and is wholly consistent with the recreational purpose of the public park. If the closure of the roads interferes with public access to the park, an argument could be made that the city is "diverting" the intended use of the park. You have informed us, however, that the proposed closures would not restrict access to the park. The action is also justified from a safety standpoint because of the heavy use of the park by pedestrians during the warmer months.
We conclude that a city periodically may close streets in a city park provided that the closures do not restrict access to the park.
* The closure of the streets would have to apply to all persons alike. In a previous opinion, we concluded that barricading a town road so as to allow access only to those persons owning property on the street was improper (1980 Op Atty Gen [Inf] 203).